13]       JANUARY TERM, 1925.        525

State ex rel. Crucible S. C. Co. v. Wis. Tax Comm. 185 Wis. 525.

STATE EX REL. CRUCIBLE STEEL CASTING COMPANY, Appellant, vs. WISCONSIN TAX COMMISSION, Respondent.

*December 13, 1924—January 13, 1925.*

*Taxation: Income returns: Deductions: Disputed and uncertain liabilities: Claims not ripened into judgment: Taxable income: Jurisdiction of tax commission: Statutes: Validity: Interest added to subsequent assessments.*

1. The tax commission properly disallowed as a deduction from a corporation's income-tax return for 1918 a reserve set up for a claim against the corporation for commissions for services rendered, which claim was then in litigation, until it ripened into judgment, regardless of whether the claim was strictly contingent.   p. 531.

2. While the tax commission could consent to returns on an accrual basis, it was not compelled to allow large deductions for liabilities wholly indefinite in amount, in process of litigation, and disputed as to validity.   p. 531.

3. Income-tax statutes are based on the theory that net and not gross incomes are taxed, but the legislature has broad powers to determine what deductions may be made; "income" for purposes of taxation not being identical with income for other purposes.   p. 531.

4. Tax laws are not necessarily unconstitutional because they work hardship and even injustice in individual cases; and the fact that an excessive assessment of the corporation for 1918 could be corrected only by an allowance in a subsequent year, in which it happened there were no profits, does not render the statute unconstitutional.   p. 532.

5. The state tax commission is not a judicial tribunal vested with equitable jurisdiction, but its jurisdiction is defined by statute; and if the statute did not authorize a certain deduction, the commission could not, on a reassessment, allow it on equitable principles.   p. 533.

6. An income-tax bill passed in each house by the required majority when the required quorum was present, by yea-and-nay vote entered on the journal, complied with sec. 19, art. IV, and sec. 8, art. VIII, Const., notwithstanding the Assembly amended and passed the bill before it was passed in the house in which it originated.   p. 534.

7. Where an assessment of income tax was made final before sub. (3), sec. 71.06, Stats. 1923 (authorizing the assessment of interest on such assessments), became effective, the tax

> commission properly added interest to taxes assessed, as the statute was passed before the time came to certify the tax and place it on the roll; and while the commission might not reopen the case on the same facts, new facts had intervened in the form of a mandatory statute.    p. 535.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Edgar L. Wood,* and oral argument by *Richard F. Tyrrell,* both of Milwaukee.

For the respondent the cause was submitted on the brief of the *Attorney General* and *Franklin E. Bump,* assistant attorney general.

JONES, J.    This is an appeal from the judgment of the circuit court for Dane county in proceedings upon a writ of *certiorari* issued from that court to the *Wisconsin Tax Commission.* The defendant made return to the writ and to this return a demurrer was filed, which was overruled.

The petition sets forth that the relator duly filed its return of income for the year 1918 subject to income taxation in Wisconsin, stating the total gross income, expenses, and deductions and the net taxable income in the amount of $64,470.41; that the *Tax Commission* gave notice of an additional assessment of income in the amount of $40,127 for 1918; that this additional assessment of income was caused by the *Tax Commission* disallowing certain deductions claimed in the return, thereby making additional net income for the year; that the principal addition is an item of $80,000 set up by the corporation on its books in 1918 as a reserve for accrued and accruing commissions and expenses; that subsequently the amount of the liability was determined by a judgment of the supreme court and paid by the taxpayer on November 4, 1920; that in said judgment it was determined that the commissions were for services performed for the relator and due in 1918 in the sum of $24,077.46; that an appeal had been denied and the assess-

ment had been affirmed by the *Tax Commission;* that notices had been given the relator of an additional assessment to that of January 4, 1923, for interest at the rate of ten per centum per annum upon all back taxes, under the authority of sec. 7, ch. 310, of the Laws of 1923; that this assessment had also been affirmed by the *Commission;* that the defendant was about to enter the additional assessments upon the corporate tax roll and certify the same to the county clerk of Milwaukee county. The return of the *Tax Commission* included relator's return of income for the year 1918, the auditor's report, and various documents and instruments relating to the issues involved.

The claim for deduction arose out of a contract with one Smith, by which the plaintiff had agreed to pay Smith certain commissions for services rendered. The company paid Smith commissions for a period, but afterward refused to pay such commissions for the year 1918. It was the claim of the plaintiff that Smith had forfeited his right to the commissions by a violation of his contract. Suit was brought by Smith against the company in August, 1917, to establish the validity of the contract and for an accounting to the date of the commencement of the action. The suit was tried in the circuit court for Milwaukee county in February, 1919, and resulted in judgment for damages for commissions earned in 1916 and 1917 to the date of the commencement of the action. The relator appealed to this court and a decision was rendered in September, 1920, modifying the judgment and awarding an accounting for commissions to the date of the trial of the case in the circuit court. An accounting was had and resulted in the finding that Smith was entitled to commissions earned in the year 1918 in the sum of $24,077.46. This judgment was paid on November 4, 1920. The increased amount of the tax, including income tax, soldiers' educational surtax, and soldiers' bonus tax, for the year 1918 was $4,255.67. Subsequently there was added an additional assessment for interest.

In the litigation between the plaintiff and Smith there

were involved claims for two years other than 1918, and commissions for those years were included in the judgment finally allowed Smith. In the briefs there is some discussion respecting these other amounts, but as the appellant's counsel state in their brief that the legality of additions of taxable income for those years is not contested, we shall confine the discussion in relation to deductions to the action of the *Tax Commission* in disallowing deduction for the year 1918. After reciting the proceedings before it and the history of the litigation between Smith and the corporation, the *Tax Commission* said in its decision:

"In view of all the circumstances, it appears that the company did not recognize that Smith had any legal claim against it. Consequently, it could not have properly deducted any amount of the commissions it was subsequently compelled to pay during the years in which the castings were manufactured. Smith's claim was entirely contingent upon winning his suit. The Wisconsin income-tax law provides that contingent losses and liabilities are not deductible. The *Commission* has consistently held in similar cases that contingent losses and liabilities cannot be deducted until based on a complete and closed transaction, and can see no reason why any exception should be made in this case."

For substantially the same reasons the trial court sustained the decision of the *Commission*.

Counsel for the appellant rely on several sections of the statutes for their claim that the deduction made in the income-tax return of the plaintiff should have been allowed. Sec. 1087*m*—3 (b), Stats. 1917, now sub. (2), sec. 71.03, reads:

"Other ordinary and necessary expenses and cash bonuses to employees, actually paid within the year out of the income in the maintenance and operation of its business and property. . . ."

Sec. 1087*m*—1, Stats. 1917, now sec. 71.01, reads in part as follows:

"There shall be assessed, levied, collected and paid a tax upon incomes . . . provided that firms . . . which cus-

tomarily close their annual accounts on a date other than December 31st, or which customarily estimate their income or profits on a basis other than of actual cash receipts and disbursements, may, with the consent and approval of the tax commission, return for assessment and taxation the income or profits earned during the business year for which the accounts of such person are customarily made up."

Sub. (3) (b), sec. 71.02, of the Statutes of 1923 reads as follows:

"The terms 'paid' or 'actually paid,' as used in this chapter, are to be construed in each instance in the light of the method used in computing taxable income whether on the accrual or receipt basis; provided, that the deduction for federal income and excess profits taxes shall be confined to cash payments made within the year covered by the income tax return, and that reserves for contingent losses or liabilities shall not be deducted."

Counsel for the relator claim that the books had been kept on an accrual basis and that the obligation which was set up in estimated figures in 1918 and finally determined by the court in 1920 constituted an allowable deduction for 1918 in the amount allocated by the court for that year; that since that amount is $24,077.46, and $80,000 was set up on the relator's books during that year, only the excess above that amount, or $55,922.54, should be disallowed. It is claimed that the relator could not, on making the return, state the true amount, and that if any deduction was made it was necessarily an estimate. It seems clear, as urged by the appellant, that the sum of $24,077.46 was earned by Smith for services rendered during 1918 and that they were services actually rendered in producing the income for that year. The payment for the services was not made during that year and not until 1920. But it is contended that the obligation for the services was incurred during 1918 and that the words "payments within the year" should be construed to include obligations incurred during the year. It may be a serious question whether the deduction was for "contingent losses or liabilities." In 1918 the claim of

Smith was in litigation. Whether it would ever ripen into judgment was uncertain. The uncertainty depended on the view the courts might adopt as to the merits and legality of the claim and its amount. That there did exist a liability in 1918 was conclusively established by the final judgment in 1920.

This court has several times defined contingent claims within the meaning of the statutes regulating the filing of demands against estates. It was said in *Austin v. Saveland's Estate,* 77 Wis. 108, 45 N. W. 955, that "A contingent claim, within the meaning of the statutes, is one where the absolute liability depends upon some future event, which may never happen, and which therefore renders such liability uncertain and indeterminable." In *Davis v. Davis,* 137 Wis. 640, 119 N. W. 334, the rule was stated as follows: "The mere fact that an accounting is necessary to determine the amount due does not make a claim a contingent claim. A contingent claim is one which may never accrue. 9 Cyc. 73. A contingent claim is one where the liability depends upon some future event which may or may not happen and therefore makes it uncertain whether there ever will be a liability." For further discussion of the subject see *South Milwaukee Co. v. Murphy,* 112 Wis. 614, 88 N. W. 583. We doubt whether the demand of Smith depended upon any such future event as to place it within the class of "contingent losses or liabilities."

Although sub. (3) (b), sec. 71.02, was not enacted until 1921, both parties cite it and rely on it. Counsel for the plaintiff argues that it was a legislative declaration of a practice of allowing the deduction of accrued items which had been adopted by the *Commission.* Counsel for the State argue that this section is merely a declaration of the effect of the law from the beginning, and in support of this position refer to the revisor's note to Bill No. 8 S, Session of 1921, to revise and renumber the income tax law. The plaintiff corporation in the return of 1918 reported a very

large deduction for a liability while in fact denying that any such liability whatever had accrued or would accrue. It does not appear that the *Tax Commission* had adopted any practice of approving or consenting to returns claiming deductions of such a character, and we find nothing in sec. 1087*m*—3 (a), Stats. 1917, which required such approval or that such deductions be allowed. The *Commission* were justified in construing the statute to mean that, although they could consent to returns on an accrual basis, they were not compelled to allow large deductions for so-called liabilities wholly indefinite in amount, in process of litigation and disputed as to validity. We are of the opinion that under the statutes the *Tax Commission* is not compelled to allow reserves for liabilities of this character, whether strictly contingent or not, until they ripen into judgment. A construction of the statutes which would require allowance of deductions for all kinds of disputed claims might lead to great and unnecessary confusion and embarrassment in the administration of the statutes relating to taxation.

The point is raised by the appellant's counsel that if it should be held that the additional assessment is authorized by any provisions of the income tax law, such provisions are unconstitutional as not within the powers conferred by sec. 1, art. VIII, of the Wisconsin constitution, as the word "income" as used in the constitution means net income and not gross income, and that expenses and deductions from gross income must be allowed in order to arrive at net income. The income tax statutes are not based on the theory that gross incomes are to be taxed. On the contrary they contain provisions for deductions from gross income, as already appears. It is well settled that in determining what deductions may be made in respect to inheritance and income taxes the legislature has very broad powers (*Estate of Week,* 169 Wis. 316, 172 S. W. 732; *State ex rel. Stern M. Co. v. Tax Comm.* 170 Wis. 506, 175 N. W. 931), and that "income" for the purposes of

taxation is not necessarily identical with "income" for other purposes. If a statute were enacted which required the *Tax Commission* to assess income taxes in such a manner as to make assessments on gross income without allowing any deductions, there might be much force in the contention now made. But we do not consider that the question is presented in this case.

By the provisions of sec. 71.10, whenever it appears probable that a corporation has been over or under-assessed or that no assessment has been made when one should have been made in any of the years following January 1, 1915, the *Tax Commission* may determine the true amount of taxable income received during the year or years under investigation, and any part of the income so ascertained and not previously assessed is to be assessed and entered upon the next assessment roll. This statute has been held constitutional. *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N. W. 578. The statute also affords a remedy to the taxpayer if the assessment has been excessive. Under the practice of the *Commission,* if in 1920, when the true amount proper to be deducted was known, it had been reported, the *Commission* could have ascertained the true income tax for 1918 and proper allowance would have been made in the assessment for 1920. The difficulty and hardship to the plaintiff in this case arises from the fact, as appears from the record, that in the year 1920 there were no profits. Many instances might be given in which tax laws and their administration work hardship and even injustice in individual cases, but it does not necessarily follow therefrom that the statutes are unconstitutional.

It is further argued by the appellant that even if the statutes may not authorize the allowance of the reserve set up in the return as a deduction from its income, the *Commission* should, on equitable principles, have deducted from the income of 1918 the amount found by the court to be due to Smith for commissions earned in that year. The case of

State ex rel. Crucible S. C. Co. v. Wis. Tax Comm. 185 Wis. 525.

*State v. C. & N. W. R. Co.* 132 Wis. 345, 112 N. W. 515, is cited on this point. That was an equitable action brought by the state for an accounting and a discovery of license dues and for the recovery of them. The *Tax Commission* is not a judicial tribunal vested with equitable jurisdiction. Its powers are defined by the statute. If, as we hold, the statute did not authorize the *Commission* to allow the deductions claimed in the return of 1918, it had no power to do so in making the additional assessment in 1923.

The further point is made by counsel for the appellant that ch. 310 of the Laws of 1923, under which the assessments of interest were made, was not legally enacted, because, as claimed, the following sections of the state constitution were not complied with. Art. IV, sec. 19, reads as follows: "Any bill may originate in either house of the legislature, and a bill passed by one house may be amended by the other." Art. VIII, sec. 8, provides:

"On the passage in either house of the legislature of any law which imposes, continues or renews a tax, or creates a debt or charge, or makes, continues or renews an appropriation of public or trust money, or releases, discharges or commutes a claim or demand of the state, the question shall be taken by yeas and nays, which shall be duly entered on the journal; and three fifths of all the members elected to such house shall in all such cases be required to constitute a quorum therein."

The bill had quite a history. But it does not seem necessary to recite the full details of its journeys back and forth between the houses before and after June 1, 1923. Counsel for the appellant complain of no irregularity prior to that date. On that date the vote by which the original bill was passed was reconsidered in the Senate, and an amendment, No. 18, was adopted, but the yeas and nays were not entered on the journal. The bill was received in the Assembly from the Senate, was referred, and on June 8th a former vote, by which the bill had been adopted, was reconsidered.

The amendment No. 18 was concurred in and the bill as thus amended was concurred in, the yeas and nays being entered on the journal. On June 19th the Senate reconsidered its vote and again passed the bill as amended, the yeas and nays being correctly entered in the journal. The bill was reported correctly enrolled, was approved by the governor, and was duly published. Before June 6th the bill had been passed in each house and had been sent to the governor, from whom it was recalled by a joint resolution. The amendment No. 18 above referred to did not relate to the assessment but to other parts of the bill. It is argued by counsel for the appellant that since the yeas and nays were not entered in the Senate journal no bill was passed by that body; that the chapter was not properly passed because "the Assembly *amended* the bill before it had passed the house of the legislature in which it originated, and because the Assembly *passed* the bill before it was passed by the house in which it originated." When the bill went from the Senate to the Assembly it was treated by the Assembly as a bill which had been duly passed. The object and purpose of art. VIII, sec. 8, of the constitution above cited seems very clear. In important legislation of the character there indicated it was deemed necessary that there should be a quorum present consisting of three fifths of all members of either house. The requirement that the question should be taken by yeas and nays and duly entered on the journal was deemed necessary both to furnish proof that the law was enacted by a majority and to fix responsibility on each member voting. The bill as approved by the governor and published was passed in each house by the required majority when the required quorum was present; the yea-and-nay vote was taken in each house on its final passage and entered on the journals. The purpose of the clause under consideration was accomplished, and we find no violation of the constitution in the mode of the enactment of the statute. We agree with the language used by the trial court in the decision there

rendered, that "To hold that a law which has been approved by the required majority of both houses as evidenced by the yeas and nays entered in the journal of each house is not a valid legislative enactment because the Assembly recorded its approval before the Senate made its record, or because the formal action taken by the Assembly was not in proper form, is to construe the constitutional provisions here in question according to the strict letter which killeth rather than in accordance with the spirit which giveth life." This makes it unnecessary to discuss the large number of cases cited relative to the presumptions concerning the regularity of legislative acts and the modes in which presumptions may be rebutted.

The assessment of back income was made final on February 15, 1923. The statute authorizing the assessment of interest on such assessments, sub. (3) of sec. 71.06, became a law June 29, 1923. This was before the time came to certify the tax and place it on the tax roll. On August 23, 1923, which was also before that time arrived, the *Commission* added interest to the taxes assessed. The claim is made that this action was beyond the powers of the *Commission;* that having once acted upon facts before it the *Commission* could not reopen the matter and make an additional assessment on the same facts. For this proposition counsel rely on *State ex rel. Schuster Realty Co. v. Lyons,* 184 Wis. 175, 197 N. W. 585, 199 N. W. 48. In that case, which related to the depreciation to be allowed on a building, where the *Commission* had taken final action some years before, it was held that, in making reassessment of income tax under sec. 71.10, Stats., the *Tax Commission* cannot act on the same identical facts it acted on in making the original assessment, but it is only when new and additional information comes to it, either through the corporation or otherwise, that it is authorized to reassess. In the case before us new facts had come to the knowledge of the *Commission,* in the shape of an important statute mandatory in its nature and

which they were required to follow. The validity of the statute has been upheld (*State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N. W. 578), and we do not consider the objection well taken.

*By the Court.*—Judgment affirmed.