TREPTE and another, Appellants, v. DEPARTMENT OF REVENUE, Respondent.

*No. 188. Argued October 3, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 567.)

82

84

For the appellants there was a brief by *Michael, Best & Friedrich,* attorneys, and *Roy C. LaBudde* and *Robert A. Schnur,* of counsel, all of Milwaukee, and oral argument by *Mr. Schnur.*

For the respondent the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J.  One issue is raised by this appeal: Do appellants have the right to deduct, under Wisconsin income tax law, the state tax prepayments made by them in 1964 for the 1965 tax year pursuant to sec. 71.21 (19) (a), Stats. 1963, in either 1964 or 1965, or in neither?

It is appellants' essential argument that their state income tax prepayment in 1964 for the 1965 taxable year is a "changing basis asset" and hence within sec. 71.05 (2), Stats. 1965, dealing with transitional adjustments resulting from the change in income reporting.  The preamble of this statute explains its purpose:

"(2) TRANSITIONAL ADJUSTMENTS.  It is the purpose of this subsection to prevent the double inclusion or omission of any item of income, deduction or basis by reason of change to reporting on the basis of federal taxable income or federal adjusted gross income." [3]

The statute further provides that if the taxpayer owned a "changing basis asset" on the transitional date which

---

[3] Sec. 71.05 (2), Stats. 1965.

had a lower adjusted tax basis for federal than for state purposes, that difference in basis could be subtracted in 1965 as a "transitional adjustment."

Appellants assert their income tax prepayment is just such a "changing basis asset." Sec. 71.05 (2), Stats., defines a "changing basis asset" as:

"6. 'Changing basis assets' means inventories and assets or accounts, including liability and reserve accounts created by accruals or other charges deducted from income, other than annuity contracts or constant basis assets. Changing basis assets include property subject to depreciation, depletion or amortization of cost, premium or discount; capitalized intangible expenses such as trade-mark expense, research and development expense and loan expense if the same are being amortized for federal income tax purposes; and accruals, reserves and deferrals of either income or expense." [4]

The first narrow question for determination by this court is whether an income tax prepayment constitutes a "changing basis asset" within the meaning of the transitional adjustments statute. We think the trial court was in error in concluding that a tax prepayment is not an asset. It was incorrect to rule out this prepayment as an asset because it "could not be bought or sold." There are many well-recognized assets which are not readily "bought or sold;" for example, accruals, reserves and deferrals of either income or expense. Thus, recognized accounting principles include tax prepayments as assets:

"Tax Prepayments. Various types of licenses, fees, and taxes are frequently paid in advance (from the standpoint of the period of applicability as viewed by the assessing entity). . . . [T]he prepaid amounts may be considered an asset insofar as they are clearly chargeable to later periods." [5]

---

[4] Sec. 71.05 (2) (a) 6, Stats. 1965.

[5] Wixon, *Accountants' Handbook* (5th ed. 1970), sec. 11.49.

However, while a tax prepayment may be viewed as an "asset," in order to fall within the transitional adjustment statute it must also be a "changing basis asset." The trial court correctly concluded that this tax prepayment did not change its base and, therefore, was not a "changing basis asset" within the contemplation of the statute. Moreover, such a tax prepayment is not among those assets specifically enumerated by the statute as being of the "changing basis" variety. Those changing basis assets enumerated include property subject to depreciation, depletion or amortization of cost, premium or discount, and the like. Also included are accruals, reserves and deferrals of either income or expense.

Moreover, under the provisions of sec. 71.05 (2) (c), Stats.,[6] a changing basis asset must be something which has both a federal adjusted basis and a Wisconsin adjusted basis. Further, the statute indicates the federal basis must exist as of January 1, 1965. The statute further provides that the Wisconsin adjusted basis must have existed as of December 31, 1964 ("on the day preceding the transitional date").[7] Since, as the respondent argues, there was no federal adjusted basis because the federal deduction had been taken in full in 1964, no changing basis asset existed.

Further, it is clear that the federal and state adjusted basis means "the adjusted basis of the asset or account for the purpose of determining gain on the *sale* or *other*

---

[6] Sec. 71.05 (2) (c), Stats. 1965: "(c) With respect to changing basis assets compute the net difference between the federal adjusted basis and the Wisconsin adjusted basis of all such assets as of the transitional date. If such net difference is a net excess of federal adjusted basis it shall be ratably amortized and subtracted from the amounts otherwise allowable to the owner as deductions . . . over such period of not more than 60 months commencing with the first day of the first taxable year ended after the transitional date as may be selected by the original owner. . . ."

[7] Sec. 71.05 (2) (a) 3, Stats. 1965.

*disposition thereof* . . . ." [8] (Emphasis supplied.) While the tax prepayment, as the respondent asserts, may have been subject to some adjustment by the 1965 tax assessments, it was not a salable asset which would call for the computation of a loss or gain within the meaning of the transitional adjustments statute.

We conclude therefore that the 1964 prepayment of the 1965 income tax did not constitute a changing basis asset and that appellants were not entitled to take a deduction for the 1964 prepayment as a transitional adjustment in the 1965 state return.

Appellants alternatively assert that the prepayments were deductible in 1964 under the presimplification sec. 71.05 (4), Stats. Appellants' argument is that the amendment to sec. 71.05 (4), which was enacted by ch. 102, Laws of Wisconsin 1963, was intended to permit immediate deductibility of prepayments made as a result of wage withholding or estimated tax declarations.[9] The last sentence of the statute which refers to when income taxes are assessed, appellants urge, only applies to informal payments of the nature made in several cases holding deductions could only be permitted in the year when assessed.[10]

This argument overlooks the plain meaning of the statute. Neither sec. 71.21 (19), Stats., dealing with prepayments, nor the amendment to sec. 71.05 (4), vary the rule in this state as to when income tax deductions

---

[8] Sec. 71.05 (2) (a) 2 and 3, Stats. 1965.

[9] ". . . For purposes of this subsection, amounts withheld by an employer from an employe's wages in compliance or purported compliance with this chapter shall be deemed Wisconsin income taxes assessed; and amounts both declared and paid pursuant to s. 71.21 shall be deemed Wisconsin income taxes assessed when paid, but no amount declared but not paid and *no amount declared and paid for a future income year shall be deemed assessed."* (Emphasis supplied.)

[10] *Bacon v. Wisconsin Department of Taxation* (1946), 3 WBTA 18; *Tautz v. Wisconsin Department of Taxation* (1942), 1 WBTA 412.

are permitted. Clearly, they are permitted in the year when the taxes are assessed. Thus, as to the 1964 prepayment of the 1965 tax, the year when the tax was assessed would be 1965, not 1964. We conclude, therefore, that the ruling sustaining the 1964 refund claim rejection was not in error.

Although not raised in appellants' brief, a valid question exists regarding whether the tax prepayments or deposits were properly deducted for federal income tax purposes in 1964. If it is determined that 1965 rather than 1964 was the proper year to deduct these tax prepayments or deposits on the federal return, appellants would be correct in their deduction of these items for Wisconsin income tax purposes in 1965. This is because sec. 71.02 (2) (f), Stats., makes the federal deductions applicable to state income taxes.[11] Thus, regardless of when appellants actually took their federal deductions for these tax prepayments or deposits, the state deductions are permissible only when appellants should have taken the federal deduction.

The Internal Revenue Code, sec. 164, states:

"(a) **General Rule.** Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued:

". . .

"(3) State and local, and foreign, income, war profits, and excess profits taxes."[12]

The code further makes the method of accounting used (cash basis or accrual basis) the determinative factor as to whether the deduction is to be taken in the year the taxes are paid or accrued. Cash basis tax-

---

[11] Sec. 71.02 (2) (f), Stats. 1965: "(f) 'Itemized deductions' means deductions from federal adjusted gross income allowable under the internal revenue code in determining federal taxable income, other than the federal standard deduction and deductions for personal exemptions."

[12] 721 *CCH-Stand. Fed. Tax Rep.*, sec. 1436 at page 18,501.

payers must take their federal income tax deduction for state taxes in the year when they are paid.[13]

In *Glassell v. Commissioner*,[14] the United States Tax Court held that persons who estimated and paid their state income tax liability for the 1944 tax year on December 24, 1944, should have received a deduction for that year. The same result was reached in *Estate of Aaron Lowenstein v. Commissioner*,[15] wherein it was held an advance payment of estimated state tax by the decedent's estate on December 31, 1942, to the state of Alabama for the 1942 taxable year should have been permitted as a valid deduction in 1944. This was true, according to the tax court, even though part of the good-faith prepayment was subsequently refunded.

Finally, an identical result was reached in *Estate of Frank Cohen v. Commissioner*,[16] wherein a taxpayer paid on December 13, 1960, his estimated income tax liability for the 1960 tax year. The tax court held that although the taxpayer had paid almost double his actual tax liability (due, in part, to the fact that he had won the Irish Sweepstakes the year previously) he should have been allowed a federal deduction for the state tax prepayment in 1960.

While these cases uniformly hold the tax prepayment deduction is to be taken, for federal tax purposes, in the year when paid, all of these situations involve an actually existing tax liability. That is, the tax prepayments were made for the taxable year which was almost concluded. In the instant case, the appellants paid in 1964 their estimated state taxes for 1965—prior to making any income in the 1965 taxable year. This was

[13] 2 Mertens, *Law of Federal Income Taxation* (Zimet rev.), ch. 12, p. 86, sec. 12.18.

[14] (1949), 12 T. C. 232.

[15] (1949), 12 T. C. 694, affirmed *sub nom. First Nat. Bank of Mobile v. Commissioner* (5th Cir. 1950), 183 Fed. 2d 172, certiorari denied (1951), 340 U. S. 911, 71 Sup. Ct. 290, 95 L. Ed. 658.

[16] (1970), 29 TCM 1221 (CCH).

not a tax prepayment of 1965 taxes at the close of 1965 as in the above cases. A valid question therefore exists with respect to whether the appellants' payments were tax prepayments within the scope of sec. 164 of the Internal Revenue Code or whether they were merely deposits upon prospective tax liability which has not come into existence.

It was held in *United States v. Anderson* [17] that income taxes only in a "technical legal sense" accrue when a tax is assessed and becomes due. In another sense, according to the court, income taxes accrue as the events giving rise to them occur (as income is earned). [18] By analogy, it would seem that a deduction "accrues" when those factors giving rise to it occur. In the present situation the factors giving rise to the deduction for state income taxes arise as the obligation arises. Thus, just as income taxes arise as income is earned, deductions affecting that income arise as it is earned also. Can it be said that a person is able to prepay an obligation which does not exist? In the cases cited, the prepayments were for actually existing tax liability. Herein the payments were made prior to any existing liability.

We conclude, therefore, that under federal tax law a tax prepayment can only be deducted in the year made— providing a liability exists for which a prepayment might be made. In the instant situation this means the appropriate year for which a deduction (made in 1964 on 1965 income) could have been validly declared, for federal tax purposes, was 1965. Such being the case, it was error for the department to disallow the prepayment deduction which appellants attempted to declare on their 1965 tax returns.

*By the Court.*—Judgment reversed.

---

[17] (1926), 269 U. S. 422, 441, 46 Sup. Ct. 131, 70 L. Ed. 347.

[18] According to 5 Mertens, *Law of Federal Income Taxation* (Zimet rev.), ch. 27, p. 145, sec. 27.57, Wisconsin state income tax "is accruable at the close of the taxable year, *i.e.,* the income tax for 1925 accrued at the close of that year."