LADISH COMPANY, Appellant, v. DEPARTMENT OF
REVENUE, Respondent.

*No. 23 (1974). Argued September 2, 1975.—Decided September
30, 1975.*
(Also reported in 233 N. W. 2d 354.)

724

For the appellants there were briefs by *Quarles & Brady*, attorneys, and *Elwin J. Zarwell, John A. Hazelwood* and *Peter C. Karegeannes* of counsel, all of Milwaukee, and oral argument by *Mr. Hazelwood.*

For the respondent the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. With the facts stipulated, the issues raised on this appeal are issues of law as to right of the taxpayer to deduct pay accruals for the last nine months of each calendar year.

*Time of accrual.*

Both parties apparently agree that if the employees' right to vacation pay has vested in such employees at the end of the calendar year, then the amount of money in the employer's vacation pay account is properly deductible. Read together, the statute governing corporate deductions[1] and the statute defining the terms, "paid" or "actually paid,"[2] do compel the conclusion that payments to employees "accrued" during the taxable year are deductible in the tax return for the year in which they "accrued."

If the right to vacation pay is held to be "contingent," under the statute, it would be a nondeductible reserve

[1] Sec. 71.04 (1), Stats., providing: "Every corporation, joint stock company or association shall be allowed to make from its gross income the following deductions:

"(1) Payments made within the year for wages, salaries, commissions and bonuses of employes and of officers if reasonable in amount, for services actually rendered in producing such income . . . ."

[2] Sec. 71.02 (1) (c), Stats., providing: " 'Paid' or 'actually paid' are to be construed in each instance in the light of the method used in computing taxable income whether on the accrual or receipt basis . . . ."

"for contingent losses or liabilities."[3] Generally speaking, liability does not "accrue" as long as the liability remains contingent[4] with the fact of contingency resting for tax purposes not on certainty of payment, but on the certainty of the obligation arising.[5] So, as to time of accrual, the question of whether the employer can deduct as "accrued" the money in the vacation pay account at the end of the taxable year depends upon whether or not the employees' right to such vacation pay has vested, or whether it is then "contingent" upon such employees not quitting or being discharged for cause before March 31st of the next taxable year.

In support of its right to deduct as "accrued" during the taxable year the moneys in the vacation pay account the employer corporation relies heavily upon the wording of the contracts between the corporation and unions representing its employees. These contracts, it is submitted, establish the intent of the parties and intent of the parties should control.[6] Such contracts provide that the basic vacation earning period for an employee is from April 1st of one year through March 31st of the succeeding year, with paid vacation time calculated

---

[3] Sec. 71.04 (7), Stats., providing in material part: ". . . Reserves for contingent losses or liabilities shall not be deducted."

[4] *Levin v. Commissioner of Internal Revenue* (3d Cir. 1955), 219 Fed. 2d 588, 589, the court there holding: "It is well settled and taxpayers seem to agree that a liability does not accrue so long as it remains contingent."

[5] *Tennessee Consolidated Coal Co.* (1950), 15 T. C. 424, 431, the tax court there holding: " 'The accruability test of a debt is not certainty of payment, but rather certainty of its liability . . . .' *Trans-California Oil Co., Ltd.*, 37 B. T. A. 119, 127."

[6] *See: W. S. Badcock Corp. v. Commissioner of Internal Revenue* (5th Cir. 1974), 491 Fed. 2d 1226, holding that where both parties considered unpaid commissions for the sale of household furnishings to be vested, including the use of them as collateral for loans, what the parties intended and how they treated such unpaid commissions should be controlling.

proportionately according to the amount of time worked. When an employee quits or is discharged for cause prior to April 1st of the succeeding year, the employee ". . . shall forfeit any right to vacation pay." While the question is close, we do not see these contract provisions as determining whether for tax purposes the employer's liability on January 1st, not March 31st, was vested or remained contingent upon the employees not quitting or being discharged for cause.

Additionally, in support of its right to deduct the vacation pay account on January 1st, the employer relies upon the stipulation that the taxpayer's "accrual" of the vacation pay is in accordance with the generally accepted methods of accounting. This is relevant, but not controlling. Normally, this fact does not foreclose or determine the issue of whether it is proper for tax purposes to make a particular deduction.[7] The question, under our statutes, is whether the computation under the method of accounting does or does not "clearly reflect the income."[8] Income taxes "accrue" as the events giving rise to them occur (as income is earned), and it follows that ". . . a deduction 'accrues' when those factors giving rise to it occur."[9]

[7] See: State ex rel. Crucible Steel Casting Co. v. Wisconsin Tax Comm. (1925), 185 Wis. 525, 531, 532, 201 N. W. 764, holding that "income" for the purpose of taxation is not necessarily identical with "income" for other purposes. See also: American Automobile Asso. v. United States (1961), 367 U. S. 687, 692, 693, 81 Sup. Ct. 1727, 6 L. Ed. 2d 1109.

[8] Sec. 71.11 (8) (a), Stats., providing in material part: "The income and profits of corporations for the income year shall be computed in accordance with the method of accounting regularly employed in keeping the books of the taxpayer, but if . . . the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the department of revenue does clearly reflect the income."

[9] Trepte v. Department of Revenue (1972), 56 Wis. 2d 81, 91, 201 N. W. 2d 567.

What then is the legal test as to whether, for tax purposes, the vacation pay rights had become vested on January 1st, or remained contingent until March 31st? That test, as we see it, is the "all-events" test requiring that the events which fix the amount of the taxpayer's liability must have come about or occurred before the end of the tax year in which the deduction is made.[10] This test requires that for an expense to be deductible in a taxable year, the events must have occurred which determine the fact of liability. It follows that only when an obligation to pay an amount becomes fixed that a deduction of such amount from gross income is allowable to an accrual basis taxpayer for Wisconsin income tax purposes.[11] Under the facts of the instant case, the employer's liability for vacation pay credits on March 31st is contingent upon the individual employee's not quitting or being discharged for cause before March 31st. The event which must occur to ascertain and determine liability for tax purposes is the continued employment of such employee through March 31st, such employment uninterrupted by the employee's quitting or being discharged for cause.[12] Under such test and on these facts,

[10] See: United States v. Anderson (1926), 269 U. S. 422, 441, 46 Sup. Ct. 131, 70 L. Ed. 347. (Cited and followed in Trepte v. Department of Revenue, supra, footnote 9, at page 91.)

[11] Aunt Nellie's Foods, Inc. v. Department of Revenue (1971), 8 W. T. A. C. 264, 267 (affirmed by Dane County Circuit Court, August 19, 1971), the tax appeals commission there stating: "Stated shortly, 'accrual' requires that at the closing date of an income year, income should include existing rights to receive and deductions should include existing obligations to pay." See also: Belle City Malleable Iron Co. v. Department of Taxation (1947), 3 W. B. T. A. 236, 251, 252, the board of tax appeals holding: "In general, expenses are 'accrued' when they are incurred." (Citing H. Liebes & Co. v. Commissioner of Internal Revenue (9th Cir. 1937), 90 Fed. 2d 932, 933.)

[12] See: World Airways, Inc. v. Commissioner of Internal Revenue (1974), 62 T. C. 786, 803, appeal pending, the tax court

we hold that the employer's liability for payments for vacation pay had not "accrued" on January 1st of the years involved.

*Statute of limitations.*

The taxpayer corporation contends that since going back to 1963 is barred by the statute of limitations (both parties have so stipulated), the fact that the corporation deducted accrued vacation pay in that year cannot be used to disallow the deduction of 1964 vacation pay paid in 1964. The claim is of a right to make a double deduction of a single item. Having received the benefit of an erroneous deduction in a closed year, the corporation now seeks a second deduction for the same item in the succeeding year. This exact contention has been rejected by the state board of tax appeals in this state.[13] Such long-standing administrative interpretation of the construction of a statute and its application is here entitled to be given controlling weight.[14] Quite

there disallowing the deduction of future overhaul expenses per flight hour in advance of their actually being paid, holding: "Thus in the taxable years for which the accrued expenses were deducted, the *operative* facts had not occurred and petitioner's liability for the overhaul costs had not become fixed."

[13] *Warner Brothers Theatres, Inc. v. Department of Taxation* (1952), 4 W. B. T. A. 164, holding the taxpayer could not claim on its return for the 1946 fiscal year, taxes paid by it in its 1946 fiscal year but previously accrued and deducted on its return for its 1945 fiscal return, the year 1945 having been closed to further assessment. *See: National Box and Specialty Co. v. Department of Taxation* (1961), 4 W. B. T. A. 589 (affirmed by Dane County Circuit Court, April 9, 1965). *See also: Wisconsin Power & Light Co. v. Department of Taxation* (1966), 6 W. B. T. A. 205.

[14] *Forsberg Paper Box Co. v. Department of Taxation* (1961), 14 Wis. 2d 93, 99, 100, 109 N. W. 2d 457, our court holding as to a published department rule: "Such long-standing rule remaining unchallenged, and giving a practical construction to the ambiguous statutory language, is entitled to controlling weight, in interpreting

aside from this fact or factor, we find neither reason nor authority for holding that a taxpayer corporation can twice claim and secure credit for a single item of expense. It is true that there are federal court cases in which such double deductions for a single item have been allowed,[15] but the federal law provides a remedy for the federal government to make itself whole in such situation.[16] If the administrative determination on this point or our application of the statutes to this double-credit situation is to be changed, it becomes the province of the legislature to change the law to provide for double-credit of a single item and to consider whether in the event of such double-credit, provision should be made for remedial adjustment or recoupment by the state department of revenue.[17]

*Adjustment for 1953 vacation pay.*

The taxpayer corporation contends that by changing when vacation pay is accrued for tax purposes the revenue department has changed the taxpayer's method of accounting, and that sec. 71.11 (8) (b) of the state

what the ambiguous statute means." *See also: Department of Taxation v. O. H. Kindt Mfg. Co.* (1961), 13 Wis. 2d 258, 265, 108 N. W. 2d 535, holding that a long-standing department audit policy was entitled to controlling weight.

[15] *See: Kenosha Auto Transport Corp. v. Commissioner of Internal Revenue* (1957), 28 T. C. 421; *Crosley Corp. v. United States* (6th Cir. 1956), 229 Fed. 2d 376; *Commissioner of Internal Revenue v. Dwyer* (2d Cir. 1953), 203 Fed. 2d 522.

[16] *See:* Sec. 1312 (2), 1954 Internal Revenue Code, providing that double allowance of a deduction allows the government to invoke the provisions of sec. 1311, 1954 Internal Revenue Code, which provides for the correction of errors in any taxable year beginning with January 1, 1932. *See also:* Sec. 1314 (d), 1954 Internal Revenue Code.

[17] *See: Eau Claire Nat. Bank v. Benson* (1900), 106 Wis. 624, 628, 82 N. W. 604, our court there first holding that, when a construction has been given to a law, ". . . it is the province of the legislature alone to change the law."

statutes[18] allows it to deduct its 1953 vacation pay accrual on its tax return for 1964. The revenue department opposes this contention on the grounds that there has been no change in the method of accounting. Both parties cite an explanatory note to the state assembly bill (1955 Assembly Bill 5) which became the statute in question. It included this statement:

"Synopsis of bill

"This bill is based on Section 481(a) of the Internal Revenue Code of 1954 and provides uniformity of treatment for taxpayers changing from the cash to accrual basis of accounting, or vice versa, regardless of whether the change is made voluntarily by the taxpayer or on order of the tax authorities. Uniformity between state and federal tax laws on this point is also achieved by this bill."

While we do not have before us a change from cash to accrual basis of accounting, the reference to intending "uniformity" between state and federal law and the patterning of the language of the state statute after sec. 481 (a) of the federal internal revenue code, leads us to accept and adopt the federal court interpretation of the federal code on the issue raised. If there is ambiguity in the Wisconsin statute, as well there may be, we resolve it in favor of "uniformity" of interpretation

---

[18] Sec. 71.11 (8) (b), Stats., providing: "In computing a corporation's taxable income for any taxable year, commencing after December 31, 1953, if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply, and except that this rule shall not modify or change the rule as to federal income and excess profits taxes set forth in s. 71.02 (1) (c)."

with the federal statute on which it is based and patterned.

The federal interpretation of the issue present, applying to the almost identical language of sec. 481 (a) of the federal internal revenue code, is contained in Treas. Reg. Sec. 1.481–1 (a) (1), providing: "A change in method of accounting to which section 481 applies includes a change in the over-all method of accounting for gross income or deductions, or a change in the treatment of a material item." Under this federal interpretation of the federal code provision, which we adopt and apply here, all that the taxpayer must establish is that there has been a change in the treatment of a "material item."[19] In the case before us we see no room for arguing that the item of deduction for vacation pay accrual was not such a material item, and we hold that the treatment of such material item by the state department of revenue was changed. So we conclude that the taxpayer here is not barred from seeking or securing an offset on its tax return for 1964 for the accrual of 1953 vacation pay.[20] While it can be claimed that this constitutes a second deduction for this

[19] *Commissioner of Internal Revenue v. O. Liquidating Corp.* (3d Cir. 1961), 292 Fed. 2d 225, 230, certiorari denied (1961), 368 U. S. 898, 82 Sup. Ct. 177, 7 L. Ed. 2d 94, the federal appeals court there holding: "On review of the record we agree with the Commissioner's contention that while taxpayer did not change its overall method of accounting it did change its treatment of a significant item—the insurance dividends which amounted to $114,000—and that its action constituted a change in the method of accounting within the meaning of the Treasury Regulations." *See also: Dorr-Oliver, Inc. v. Commissioner of Internal Revenue* (1963), 40 T. C. 50, holding vacation pay to be a "material item."

[20] The state revenue department does not dispute that if there has been a change in the method of accounting, the taxpayer corporation is entitled to an offset to the disallowed 1964 deduction equal to the amount of the 1953 accrual. (The department sees the change as involving time of accrual, not method of

same item,[21] and we have held that, absent legislative authorization, a double credit for a single exemption cannot be claimed, we hold here, applying the federal construction, that the legislature has authorized such an offset in the 1964 tax return for vacation pay accrued in 1953 because "a change in the treatment of a material item" in the method of accounting occurred by reason of the action of the state revenue department. So holding, we modify the judgment of the circuit court to grant an allowance of the deduction for vacation pay accrued in 1953 in the amount stipulated by the parties on the 1964 tax return of the defendant corporation.

*By the Court.*—Judgment modified and, as modified, affirmed.

---

accounting.) The basis for such deduction would derive from the interpretation of sec. 481 of the federal internal revenue code, on which sec. 71.11 (8) (b) of our statutes is patterned. The federal treasury regulation, sec. 1.481–3, provides: "If the adjustments required by section 481 (a) and sec. 1.481–1 are attributable to a change in method of accounting which was not initiated by the taxpayer, no portion of any adjustments which is attributable to pre-1954 Code years shall be taken into account in computing taxable income. For example, if the total adjustments in the case of a change in method of accounting which is not initiated by the taxpayer amount to $10,000, of which $4,000 is attributable to pre-1954 Code years, only $6,000 of the $10,000 total adjustments is required to be taken into account under section 481 in computing taxable income. The portion of the adjustments which is attributable to pre-1954 Code years is the net amount of the adjustments which would have been required if the taxpayer had changed his method of accounting in his first taxable year which began after December 31, 1953, and ended after August 16, 1954. *See* section 481 (b) (4) (A)."

[21] *See: Oberman Mfg. Co. v. Commissioner of Internal Revenue* (1967), 47 T. C. 471, 481, stating of a change in the treatment of a material item in the method of accounting and a consequent tax deduction allowed: "Indeed as a result of the change in method initiated by the respondent, the petitioner will have the benefit of a duplication of deductions on account of vacation pay to the extent of $18,551.85."