ADVANCE PIPE & SUPPLY CO., INC., and
Milwaukee Sewer Pipe & Supply Co., Inc.,
Petitioners-Appellants,

v.

WISCONSIN DEPARTMENT OF REVENUE,
Respondent.

Court of Appeals

*No. 84–1551. Submitted on briefs October 18, 1985.—*
*Decided January 9, 1986.*
(Also reported in 383 N.W.2d 502.)

For the petitioners-appellants the cause was submitted on the briefs of *Scott B. Fleming* and *Weiss, Steuer, Berzowski, Brady & Donahue,* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Gerald W. Wilcox,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Advance Pipe & Supply Co. and Milwaukee Sewer Pipe & Supply Co. appeal from a judgment affirming a decision of the Tax Appeals Commission which assessed a sales tax on the companies' sales of manhole components. The issues are: (1) whether appellants are real property construction contractors within the meaning of secs. 77.51(4)(i) [1] and 77.51(18), Stats;[2] and (2) if not, whether the Department of Revenue should be estopped from denying appellants' status as real property construction contractors under the statutes. Because we conclude that appellants are not involved in real property construction activities and have not established the elements of estoppel, we affirm.

Normally, a sales tax is not imposed on manufacturer-to-dealer transactions, but rather on

[1] "(i)  Sales of building materials, supplies and equipment to owners, contractors, subcontractors or builders for the erection of buildings or structures or the alteration, repair or improvement of real property. Such transactions are deemed retail sales in whatsoever quantity sold."

[2] "(18)  'Contractors' and 'subcontractors' are the consumers of tangible personal property used by them in real property construction activities and the sales and use tax applies to the sale of tangible personal property to them. A contractor engaged primarily in real property construction activities may use resale certificates only with respect to purchases of property which he has sound reason to believe he will sell to customers for whom he will not perform real property construction activities involving the use of such property."

dealer-to-customer transactions, because the latter constitute the final retail sales. However, when the final transaction involves construction on real property, the sales tax cannot be imposed because there is no transfer of tangible personal property within the meaning of the tax laws. In such a situation, sec. 77.51(4)(i), Stats., defines the manufacturer-to-dealer transaction as the "retail sale" and imposes the tax at this level. *Dept. of Revenue v. Smith Harvestore Products,* 72 Wis. 2d 60, 66, 240 N.W.2d 357, 359–60 (1976).

Thus, if appellants are performing "real property construction activities" within the meaning of sec. 77.51(18), Stats., then their purchases of raw materials are subject to tax but their sales of precast manhole components to contractors are not taxable transfers. If, on the other hand, appellants are manufacturers rather than real property contractors, their sales of manholes are subject to the sales tax, but their purchases of materials are not. The commission concluded that appellants did not meet the statutory definition and that their sales and deliveries of building materials to contractors are retail sales subject to taxation. As a result, appellants are chargeable with collecting the appropriate tax and paying the proceeds to the department.

On appeal, our task is to determine whether the commission's decision is correct, and we owe no deference to the trial court. *Stafford Trucking, Inc. v. ILHR Dept.,* 102 Wis. 2d 256, 260, 306 N.W.2d 79, 82 (Ct. App. 1981). In this case only a question of law is presented, which we review *ab initio,* although the commission's construction of sec. 77.51(4)(i) and (18), Stats., will not be upset if it has a rational basis. *Environmental Dec-*

*ade v. ILHR Dept.,* 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981).

To determine whether appellants are engaged in real property construction within the meaning of the statute, we must look to the general scope of their activities. It is the substance and reality of those activities which are determinative. *Department of Revenue v. Sterling Custom Homes,* 91 Wis. 2d 675, 679, 283 N.W.2d 573, 575 (1979).

The facts are undisputed. Historically, on-site laborers built manholes brick by brick from the bottom of the manhole pit to the surface of the road. In recent years, however, an improving technology permits off-site fabrication. Advance Pipe manufactures precast manhole components, selling fifty percent of its total production to its sister company, Milwaukee Sewer, who in turn sells the manholes to plumbing contractors. Advance Pipe sells the remaining fifty percent directly to sewer contractors. Advance Pipe delivers all of the manhole components—those it sells itself and those sold by Milwaukee Sewer—to specific building sites.[3]

Each manhole consists of a base, three component parts, and several adjusting rings. Only the base is individually designed and fabricated for the specific site; the other components are standardized. Some bases, however, are themselves standard. Approximately thirty percent come from Advance Pipe's inventory stock. Manhole foundations are standardized as well, and Advance Pipe maintains an inventory of standard

---

[3] The two companies have a common management, and Milwaukee Sewer & Pipe subcontracts all of its deliveries through Advance Pipe.

component parts which are modified and incorporated into specific manhole designs.

Advance Pipe designs each manhole, using specifications provided by the contractor. The standardized parts of the manhole are selected and drilled to the contractor's specifications. As a result, they become unique to the site and are no longer interchangeable. After the design and fabrication process is complete, Advance Pipe delivers the unassembled manhole to the construction site and, using its own driver and crane, unloads the components in sequence. Only twenty-five percent of Advance Pipe's own deliveries occur after the ground is prepared, although all of its deliveries for Milwaukee Sewer are to prepared sites. When this is the case, the drivers usually place the manhole components next to the excavation. Advance Pipe's drivers generally leave the site immediately after delivery. Indeed, in the rare instances when Advance Pipe employees do any erecting on the site, there is an additional charge.

In *Sterling, supra,* a case appellants argue is dispositive of this appeal, the issue was whether Sterling Homes, a manufacturer of "unique" custom-designed prefabricated homes, was engaged in real property construction activities within the meaning of secs. 77.51(4)(i) and 77.51(18), Stats. Sterling Homes manufactured the homes at its plant and supplied its builder-customers with detailed plans for the foundation. While the builders were ultimately responsible for installing the foundation, Sterling Homes coordinated the foundation plans with its prefabricated components to insure a proper fit. The parts of any prefabricated house were unique and were not interchangeable with the components of any other house. Sterling

Homes did not deliver any materials to the site until the foundation was completed. Upon delivery, the driver would unload the components in the order they would be used in erecting the house. Because the drivers were so familiar with the process, they generally remained at the site to supervise or otherwise assist in the erection. They would not leave until the house was fully erected.

The supreme court held that Sterling Homes was engaged in real property construction activities within the meaning of sec. 77.51(4)(i) and (18), Stats., and was, with respect to the sale of its homes, exempt from taxation.

The taxpayer used the materials it purchased for only a single purpose—to construct custom-designed houses to be assembled at predetermined locations on foundations which were specifically designed for the prefabricated components. The components thus assembled were consumed by the very process of fabrication, for they would be useless in their fabricated form except for the very building for which designed.

... Additionally, ... [i]t was the taxpayer who designed the building and the components for the particular site. It determined the order in which the components were manufactured and loaded, and thereby dictated the assembly sequence. Because the taxpayer furnished the builder with detailed erection plans, it determined the manner in which the houses were erected. While the drivers had no responsibility to erect the houses, they were required to stay at the job sites, even after the trucks were unloaded, to make sure that the houses went up properly. *Id.* at 679–80, 283 N.W.2d at 575.

The commission concluded that *Sterling* is distinguishable, and appellants challenge that conclusion as erroneous. They argue that their activities constitute an "exact analogue" to the taxpayers in *Sterling* and that any distinctions are either trivial or lacking in legal significance. We disagree.

Unlike the taxpayer in *Sterling,* appellants are not significantly involved in the on-site erection process. In *Sterling,* the homes were individually customized, and each was unique to the designated site. Sterling Homes kept no inventory of components but rather developed building parts for the individual homes, all of which were assembled (with the assistance of its own employees) on foundations it had specifically designed for them.

Advance Pipe, on the other hand, uses plans and specifications developed by the contractors. It fabricates a significant portion of each manhole with standard parts from its inventory, modifying the parts to some degree to meet a particular need. Because many manhole components are interchangeable, Advance Pipe maintains an inventory. The inventoried components may be dedicated to more than one purpose, and individual parts may fit any number of manhole designs, even though the final product is, to a large degree, site specific. In *Sterling,* the components for a particular house were not interchangeable with those for any other. As a result, Sterling Homes kept no inventory of house components.

Moreover, appellants' operation is not as integrated as Sterling Homes'. Sterling Homes made deliveries only to prepared sites, and its drivers would remain on the site to advise and assist in the erection

process. In contrast, only twenty-five percent of Advance Pipe's deliveries are made to sites that have been prepared to any degree. In addition, Advance Pipe provides construction assistance only five percent of the time, and it charges additional fees for this work. Advance Pipe's drivers routinely leave the site after unloading the components and before any construction begins.

On these facts, we conclude that *Sterling* is distinguishable and that appellants are operating as retailers who deliver building materials to plumbing and sewer contractors. Unlike the situation in *Sterling,* it is not Advance Pipe but the purchasing contractors who perform the "real property construction."

Appellants argue, however, that the department should be "equitably estopped" from denying their status as real property construction contractors. The argument is based on an April, 1982, letter from the department stating that Advance Pipe was entitled to a sales tax refund. Appellants claim that they relied on the letter and thus, to their detriment, neither charged nor collected sales tax from their contractor-customers.

Equitable estoppel arises where there is (1) action or inaction by one party which (2) reasonably induces reliance by the other party (3) to the latter party's detriment. *Kohlenberg v. American Plumbing Supply Co.,* 82 Wis. 2d 384, 396, 263 N.W.2d 496, 501 (1978). The party asserting estoppel must prove all of the elements by clear, convincing and satisfactory evidence. *Mowers v. City of St. Francis,* 108 Wis. 2d 630, 633, 323 N.W.2d 157, 158 (Ct. App. 1982). The doctrine is not applied as freely against governmental agencies as it is against

private parties. We use utmost caution and restraint in such instances "for it is not a happy occasion when the Government's hands, performing duties in behalf of the public, are tied by the acts and conduct of particular officials in their relations with particular individuals." *Department of Revenue v. Moebius Printing Co.,* 89 Wis. 2d 610, 638, 279 N.W.2d 213, 225 (1979), quoting *Schuster v. C.I.R.,* 312 F.2d 311, 317 (9th Cir. 1962). Estoppel may be invoked against the department in some cases, however. "[W]here a party seeks to estop the Department of Revenue and the elements of estoppel are clearly present, the estoppel doctrine is applicable where it would be unconscionable to allow the state to revise an earlier position." *Id.* at 641, 279 N.W.2d at 226.

The department's letter to Advance Pipe neither acknowledges nor concludes that appellants are involved in real property construction activities within the meaning of the tax laws. The refund was made solely on the basis of statements by Advance Pipe in its sales and use tax return that it was engaged in such activities. The return did not describe Advance Pipe's activities; it stated simply that its sales were "generated primarily from real construction activity and are not subject to sales tax." The department accepted Advance Pipe's representation as true, and its failure to challenge the return or perform an audit at that time should not preclude it from later revising its position after investigating the company's actual operations. We agree with the trial court that: "The taxpayers . . . were not relying upon statements made by the Department. Indeed, the Department was relying upon statements made by Advance Pipe." Appellants have not

shown the existence of the elements of estoppel; nor have they established that the department's actions were unconscionable.

*By the Court.*—Judgment affirmed.