WISCONSIN DEPARTMENT OF REVENUE,
Petitioner-Appellant,

v.

JOHNSON & JOHNSON, a partnership, d/b/a
Asphalt Products Co., and Asphalt Products Co.,
Inc., Respondent. †

Court of Appeals

*No. 85–0050. Submitted on briefs January 8, 1986.—
Decided March 6, 1986.*

(Also reported in 387 N.W.2d 91.)

For the petitioner-appellant the cause was submit-
ted on the briefs of *Bronson C. La Follette*, attorney

---

† Petition to review denied.

general, and *John C. Murphy,* assistant attorney general.

For the respondent the cause was submitted on the brief of *Hiram D. Anderson, Jr.,* and *Ronald T. Skrenes,* and *Anderson, Fisher, Shannon, O'Brien & Rice,* of Stevens Point.

Before Gartzke, P.J., Eich, J., and Bruce F. Beilfuss, Reserve Judge.

EICH, J. The Department of Revenue appeals from an order affirming a decision of the Tax Appeals Commission. The commission concluded that purchases of raw materials by the respondent Asphalt Products Company (APC) were exempt from the sales tax under secs. 77.52(13) and (14) and 77.51(18), Stats. The sole issue is whether APC is a real property construction contractor within the meaning of sec. 77.51(18). We answer the question in the affirmative and therefore reverse.

APC purchases raw materials from suppliers for use in the manufacture of emulsified asphalt products. The end product is sold to local units of government for road repair and construction. Generally, under secs. 77.52(13) and (14), Stats., APC's purchases would be exempt from the sales tax if the materials were simply resold to the ultimate consumers. If, however, APC is a "contractor" as that term is defined in sec. 77.51(18) —if it is a "consumer" of the purchased materials in that its resale to the ultimate customer involves the "performance of real property construction activities" by APC—the exemption is unavailable. The commission and the circuit court concluded that APC's activities did not fit the statutory definition and that APC was entitled to the benefits of the "resale exemption."

The question to be decided is a mixed question of fact and law to which we apply a mixed standard of review. We accept the commission's findings of fact if they are supported by credible and substantial evidence. Section 102.23(6), Stats. Whether those facts meet the legal standard of real property construction activity, however, is a question of law. *Environmental Decade v. ILHR Dept.*, 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981). We review such determinations *ab initio,* although we defer to a certain extent to the enforcing agency's construction and application of a statute. That construction will not be upset if it has a rational basis. *Id.*

Section 77.51(18), Stats., defines "contractors" as

consumers of tangible personal property used by them in real property construction activities and the sales and use tax applies to the sale of tangible personal property to them. A contractor engaged primarily in real property construction activities may use resale certificates [and thus claim the exemption] only with respect to purchases of property which he has sound reason to believe he will sell to customers for whom he will not perform real property construction activities involving the use of such property.

To determine whether APC is a contractor engaged in real property construction within the meaning of the statute, we must look to the general scope of its activities, because the substance and reality of those activities are determinative. *Department of Revenue v. Sterling Custom Homes,* 91 Wis. 2d 675, 679, 283 N.W.2d 573, 575 (1979).

The material facts are not in dispute.[1] APC manufactures emulsified asphalt products from materials purchased from suppliers. It then sells these products to tax exempt entities, primarily towns, municipalities and counties, for use in road construction and repair.[2] APC's sales involve more than simple delivery; it surfaces the road with the product as part of a "seal coating" process, one of several steps in highway construction or repair. The purchaser prepares the road for APC's spraying operations and reroutes traffic during the application period. When APC's operations are completed, the purchaser completes the overall project with its own personnel. The purchaser controls the method, time and date of delivery and specifies the amount of asphalt to be applied. It designates the thickness, width and number of applications. The overall project is under the supervision of a state inspector or county foreman.

APC uses its own distribution equipment, expertise and personnel to apply the asphalt. It insures that the asphalt meets specific tolerances for purity, temperature and composition in conformance with the

[1] APC takes a contrary position, asserting that the facts regarding the nature of its activities "when dumping asphalt onto the road" are vigorously disputed. We disagree. The parties' only dispute is whether APC's spreading of asphalt onto the ground is an "application" or a "delivery," for each term carries a different legal connotation. Semantics aside, the dispute is strictly one of law; the facts of APC's operations—what it actually does with the materials—are not in dispute.

[2] Because APC's ultimate transactions are with tax exempt entities, no tax is assessed at that end of the process. If, as the commission and the circuit court held, APC is not a "contractor" and is thus entitled to take advantage of the "resale exemption," no sales tax is assessed at the beginning either.

purchaser's requirements. When spraying the asphalt, APC uses its own transport truck which is fitted with spray bars and nozzles.[3] To insure uniformity of application, APC calibrates pressure gauges, meters and controls on the equipment so that the angle of the spray nozzle and the height of the spray bar are properly adjusted. APC also maintains appropriate temperatures for various types and grades of asphalt and, in general, monitors and controls the spraying so as to meet the purchaser's specifications.

■

APC argues that the word "contractor," as it appears in sec. 77.51(18), Stats., is ambiguous and that we should define it, as the trial court did, as requiring "control [over] the details of the work." The court's definition is inapposite. It is taken from *Bond v. Harrel,* 13 Wis. 2d 369, 374, 108 N.W.2d 552, 555 (1961), where the court was defining the term for only a very limited purpose: to distinguish between an independent contractor and an agent in the context of vicarious tort liability. Section 77.51(18) specifically defines the term for purposes of the sales tax exemption; and when the legislature has undertaken to define a term for a specific application, we will not add to or expand that definition. *Dept. of Transp. v. Transp. Comm.,* 105 Wis. 2d

---

[3] The commission found that "[d]uring the period under review [APC] did not own or use an asphalt distributor, which is an important piece of equipment used to apply uniformly the asphalt emulsion over a surface at the specified rate, however, it used a truck as stipulated." It is undisputed that the truck was a 6,000 gallon tractor trailer transport truck used either to spray the product on the ground or pump the product into holding tanks. APC's truck, in fact, is an asphalt distributor; the commission's finding to the contrary is not supported by the evidence.

678, 689, 315 N.W.2d 371, 377 (Ct. App. 1981), *aff'd,* 111 Wis. 2d 80, 330 N.W.2d 159 (1983).

Applying emulsified asphalt is one of six major steps in highway surface treatment. APC is responsible for accomplishing its particular task according to established specifications. It performs a distinct part of the on-site road construction and repair work for the projects in which it participates. In this light, APC becomes the ultimate consumer of the purchased materials in the statutory sense: it "consume[s] and use[s] the[m] . . . in creating a new and different product"— the finished roadway. *Dept. of Revenue v. Smith Harvestore Products,* 72 Wis. 2d 60, 67, 240 N.W.2d 357, 360 (1976).

In *Rice Insulation, Inc. v. Dept. of Rev.,* 115 Wis. 2d 513, 515, 340 N.W.2d 556, 557 (Ct. App. 1983), the taxpayer claimed the "resale" exemption in connection with its purchases of insulation materials from a manufacturer. Because the taxpayer not only sold but also installed the insulation, however, the court concluded that it was a "contractor" under sec. 77.51(18), Stats., and was therefore not entitled to the exemption. APC's activities, while less pervasive, are similar. Applying asphalt to a road surface, like installing insulation, is much more than simple delivery. It is construction activity involving "consumption" of the purchased materials.

Finally, in a recent case, *Advance Pipe & Supply Co. v. Department of Revenue,* 128 Wis. 2d 431, 383 N.W.2d 502 (Ct. App. 1986), we ruled that a manufacturer of manhole components was not a contractor under sec. 77.51(18), Stats. Advance Pipe manufactured the components in its own factory and delivered them to unprepared sites for erection by the ultimate

purchaser. Its drivers routinely left the sites immediately after unloading the components. Unlike Advance Pipe, APC is "significantly involved" with the highway construction. It performs a major step in the highway surfacing, and its operation is a fully "integrated" part of the on-site construction process. *Id.* at *438,* 383 N.W.2d at 505.

We hold, therefore, that APC is a consumer of tangible personal property used by it in real property construction activities within the meaning of sec. 77.51(18), Stats. As a result, it may not avail itself of the "resale exemption" provided by secs. 77.52(13) and (14) with respect to its purchases of raw materials.[4]

*By the Court.*—Order reversed.

---

[4] APC contends that this result is unreasonable because it will "force . . . asphalt producers to pump asphalt products into holding tanks . . . rather than . . . directly onto the road." As a result, the exempt entities will then have to apply the asphalt themselves, and this will lead to lost time, larger payrolls and inefficiency. APC maintains that, in the end, the cost of road repairs will increase, and tax exempt entities will be indirectly paying the use tax in the form of higher prices. But an entity's exemption from taxation does not grant similar immunity for those who furnish supplies to it. "That a seller may pass a tax on to an exempt entity in the form of higher costs does not relieve the seller from liability for the tax." (Citation omitted.) *Rice,* at 516, 340 N.W.2d at 557–58.