KENNETH F. STELZIG, Chair Employe Trust Funds Board TeachersRetirement Board
You have requested my opinion on eight questions relating to the scope of the powers of the Employe Trust Funds (ETF) Board, the Teachers Retirement (TR) Board and the Wisconsin Retirement (WR) Board in contested cases which come before them.
The TR Board and the WR Board hear timely appeals from determinations by the Department of Employe Trust Funds (Department) regarding disability annuities for teacher and non-teacher participants, respectively, under section 40.63 (5) and (9)(d), Stats. Secs. 40.03 (7)(f) and 40.03 (8)(f), Stats. "Timely appeal" is defined as a written request for review of a determination that is filed within ninety days after the determination is mailed to the person aggrieved by the determination. Sec. 40.02 (55m), Stats., created by 1989 Wisconsin Act 166, sec. 1.
The ETF Board hears timely appeals, as defined by section40.02 (55m), from all Department determinations except those disability appeals heard by the TR and WR Board and those matters heard by the Group Insurance Board. Sec. 40.03 (1)(j), (6), (7), and (8), Stats. Section 40.03 (1)(j) provides that the ETF Board "shall review the relevant facts and may hold a hearing." Pursuant to section 40.08 (12), any action, decision or determination of the ETF Board may be reviewed only by certiorari, "[n]otwithstanding s. 227.52." *Page 140 
Chapter 227 sets forth detailed procedures for administrative decision making in contested cases. It is clear that these procedures apply to cases before the TR and WR Boards. The threshold question, numbered seven in your request, is whether the ETF Board's exemption from chapter 227 judicial review procedures also exempts the ETF Board from the pre-review decision making procedures of chapter 227.
Section 227.42 (formerly section 227.064) creates a residual hearing right to those who meet its conditions and are not granted a specific right to a hearing by other statutory provisions or administrative rules. Milwaukee Met. Sewerage Dist. v. DNR,126 Wis.2d 63, 73, 375 N.W.2d 649 (1985). Section 227.42 (3) creates an exception to the residual hearing right created by section 227.42 (1). The right does not apply to "actions where hearings at the discretion of the agency are expressly authorized by law." Section 40.03 (1)(j) is such a statute. Thus, chapter 227's detailed procedures for administrative decision making in contested cases do not apply to contested cases before the ETF Board.
Nonetheless, where the Department's determination is unfavorable to the employe, due process requires the ETF Board to provide the employe with a hearing on reasonable notice and an opportunity to present evidence, testimony and argument.Ruhmer v. Wisconsin State Teachers Retirement Bd., 48 Wis.2d 419,428, 180 N.W.2d 542 (1970). Although the details of the administrative hearing cannot be defined mechanically or precisely, the opportunity to be heard encompasses the following elements:
 (1) Timely and adequate notice detailing the reasons for a proposed termination; (2) an effective opportunity [for the recipient] to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally; (3) retained counsel, if desired; (4) an impartial decision maker; (5) a decision resting solely on the legal rules and evidence adduced at the hearing; and (6) a *Page 141 
statement of reason for the decision and the evidence relied on.
State ex rel. Michalek v. LeGrand, 77 Wis.2d 520, 533-34,253 N.W.2d 505 (1977).
Your first question is:
 When reviewing a Department determination, what limits are there on the [ETF, TR and WR] Board's power to order a different determination?
Generally speaking the only restrictions on the board's power are that it may not exceed its jurisdictional authority, may not act in an arbitrary or capricious manner and may not order determinations which are contrary to law. Hennekens v. RiverFalls Pol. Fire Comm., 124 Wis.2d 413, 419,369 N.W.2d 670 (1985). If the board rejects the facts found by the hearing examiner, it may substitute its own findings after it consults with the examiner who heard and saw the witnesses and after it states on the record its reasons for modifying the examiner's findings.Transamerica Ins. Co. v. ILHR Department, 54 Wis.2d 272, 284,195 N.W.2d 656 (1972). Findings of fact made by the board must be based on evidence which the board believes proves the findings to a reasonable certainty by the greater weight of the credible evidence. Reinke v. Personnel Board, 53 Wis.2d 123,137-38, 191 N.W.2d 833 (1971).
Your second question is:
 Is the [ETF] Board limited in its equity powers to only the specific authority found under s. 40.03 (1)(a), Wisconsin Statutes? Are there any powers of equity afforded to the [ETF, TR or WR] Board under other law?
Section 40.03 (1) provides, in relevant part:
The board:
 (a) Shall authorize and terminate the payment of all annuities and death benefits, except disability annuities, in accordance with this chapter and may adjust the computation of the amount, as provided by this chapter, as necessary to *Page 142 
prevent any inequity which might otherwise exist if a participant has a combination of full-time and part-time service, a change in annual earnings period during the high years of earnings or has previously received an annuity which was terminated.
As a general matter, an administrative agency created by the Legislature has only those powers which are expressly conferred or necessarily implied by the statutes under which the agency operates. Kimberly-Clark Corp. v. Public Service Comm.,110 Wis.2d 455, 461-62, 329 N.W.2d 143 (1983). Any reasonable doubt as to the existence of an implied power should be resolved against the exercise of that authority. 110 Wis.2d at 462.
Under these rules of construction, the ETF Board's equity powers are limited to the circumstances and extent defined by section 40.03 (1)(a). I have located no other statute which, in my opinion, expressly or impliedly gives the ETF Board additional equity powers. The legislatively defined powers of the TR and WR Boards, in my opinion, also contain no express equity powers and no language from which equity powers could be inferred.
Your third question is:
 When exercising the [ETF, TR or WR] Board's powers in a case where the Board reviews a Department determination and finds the Department has acted within its statutory authority, obeyed statutory directives and limitations, such as time limits, but Board members feel the result is not equitable, may the [ETF, TR or WR] Board order a different determination? May the different determination exceed express statutory authority or contradict statutory directives or limitations, such as time limits?
Because your question refers to time limits only as an example, my answers will not be limited to circumstances involving time limits. If the "inequitable" result were based on the Department's interpretation of an ambiguous statute susceptible of multiple interpretations, the boards could adopt a less "inequitable" *Page 143 
interpretation of the ambiguous statute. Similarly, if the Department's decision depends on an "inequitable" resolution of disputed factual issues, the boards can substitute their own findings of fact, if consistent with a preponderance of the evidence, subject to the consultation required by theTransamerica Ins. Co. case, 54 Wis.2d at 284. However, in no circumstance could the boards adopt interpretations which are directly contrary to the facts or exceed express statutory authority or contradict statutory directives or limitations. Moreover, an agency charged with administering the law may not substitute its own policy for that of the legislature. Niagara of Wis. PaperCorp. v. DNR, 84 Wis.2d 32, 48, 268 N.W.2d 153 (1978).
Your fourth question is:
 Do the provisions found under Sections 40.01 (1) (2) provide discretion to the [ETF, TR or WR] Board to take actions which it deems consistent with the purposes of the trust but not specifically authorized under Chapter 40? Do these provisions [s. 40.01 (1) and (2), Stats.] give the [ETF, TR or WR] Board discretion to take actions consistent with the stated purposes of the Trust rather than a specific provision of Ch. 40?
Section 40.01 (1) creates the Public Employe Trust Fund and describes the public policies to be furthered by the fund. The section does not by its terms or by implication invest the ETF, TR or WR Boards with any powers or duties not otherwise granted to the boards under separate statutory authority.
Section 40.01 (2) defines the purposes of the Public Employe Trust Fund. In relevant part, that section provides:
 The public employe trust fund is a public trust and shall be managed, administered, invested and otherwise dealt with solely for the purpose of ensuring the fulfillment at the lowest possible cost of the benefit commitments to participants, as set forth in this chapter, and shall not be used for any other purpose. . . . All statutes relating to the *Page 144 
fund shall be construed liberally in furtherance of the purposes set forth in this section.
There is potential tension between the directive to liberally construe the Public Employe Trust Fund statutes in furtherance with the purposes of the fund and the purpose of the fund to ensure low cost and fulfillment of benefit commitments "as set forth in this chapter." The general rule followed by the courts is that the policy of liberal construction may not create rights by repealing or changing the obvious meaning of the statutes. Statev. LIRC, 136 Wis.2d 281, 288, 401 N.W.2d 585 (1987). Thus, neither the ETF Board nor the TR or WR Boards can take action based on the purposes of the fund, stated in section 40.01 (2), if the proposed action is not specifically authorized by another provision of chapter 40. See Grogan v. Public ServiceCommission, 109 Wis.2d 75, 81, 325 N.W.2d 82 (Ct.App. 1982).
Your fifth question is:
 When the [ETF, TR or WR] Board believes that the facts of a case are consistent with a previous case which has been adjudicated by a court, may the Board decide to apply the same judicial doctrines as applied by the court in such earlier case (e.g. equitable estoppel)?
The broad scope of your question necessitates a somewhat general answer. The tenor of your question appears to inquire about the application of certain judicial doctrines designed to limit relitigation by a party of claims or issues which have been determined against the party in previous litigation. The first doctrine, res judicata, provides that a prior judgment on the merits between two parties bars subsequent litigation between those parties on the same cause of action. DePratt v. West BendMut. Ins. Co., 113 Wis.2d 306, 311, 334 N.W.2d 883 (1983). Under the hypothesis of your question, the individual in the subsequent case is different from the person involved in the prior judicial case. The element of identity of parties is absent. Thus, the doctrine would not be applicable. *Page 145 
A related doctrine, claim preclusion, bars relitigation by a party of an issue of fact conclusively determined against the party in a prior proceeding after a fair opportunity to litigate the issue.Crowall v. Heritage Mut. Ins. Co., 118 Wis.2d 120, 126,346 N.W.2d 327 (Ct.App. 1984). In the hypothesis of your question, only the Department could meet even the threshold for application, since only it was involved in the prior proceeding. Thus, the boards could not use the prior judicial determination to deprive the individual of his or her right to litigate the issue. On the other hand, if the ETF, TR or WR Board has before it the same issue of fact previously determined by a court adversely to the Department, the doctrine could bar the Department from relitigating the fact if the other preclusion elements are met. SeeAcharya v. AFSCME, Council 24, WSEU, 146 Wis.2d 693,432 N.W.2d 140 (Ct.App. 1988); Schaeffer v. State PersonnelComm., 150 Wis.2d 132, 441 N.W.2d 292 (Ct.App. 1989). The boards must exercise caution when considering the application of preclusion doctrines, however. In the question's hypothesis, for example, a fact situation which is merely "consistent with [the facts of] a previous case" will require careful legal analysis before it can be determined whether the issues are identical in both the prior and subsequent proceedings and whether a statute of limitations precludes relief.
The specific doctrine you mention in the question (equitable estoppel) requires special treatment. Equitable estoppel is a judicial doctrine which prevents a party from asserting its legal rights where it acted or failed to act in circumstances that reasonably induced reliance by another party to the latter party's detriment. Advance Pipe Supply v. Revenue Dept., 128 Wis.2d 431,439, 383 N.W.2d 502 (Ct.App. 1986). The doctrine is rarely applied to action or inaction by the government. Id. at 439-40. To estop the government, the party must demonstrate that it would be unconscionable to allow the state to revise an earlier position. Id. at 440. Without additional facts, it is very difficult to conclude that the ETF Board's limited equity powers under section 40.03 (1)(a) would permit the application of this *Page 146 
doctrine to situations under section 40.03 (1)(a). Since the TR and WR Boards have no equity powers, the doctrine is completely inapplicable to these boards.
Your sixth question is:
 If an "administrative error" made by an agent of the Department (e.g., an employer or an outside contractor employed by the Department) caused a participant to take an action which, but for the error, would not have been taken, does the [ETF, TR or WR] Board have the authority to consider the "adverse reliance" and order appropriate action? Is the answer the same if the agent's error caused the participant to fail to take an action which would have otherwise been taken? What if the error was caused by a third party with no official relationship with the department (e.g., an insurance agent, union official, etc.)?
In the absence of a concrete fact situation, only the most general answer to your question can be given. First, the law in this area makes no distinction between action and inaction.Advance Pipe Supply, 128 Wis.2d at 439. Second, a participant who relies solely on erroneous advice of another with no official relationship to the Department cannot establish that he relied on the Department's action or inaction. Thus, the ETF Board could not equitably estop the Department from asserting its position based on advice given by that third party. Neither could the TR or WR Boards estop the Department from asserting its position, since both of these boards completely lack equity powers.
Your question does not provide enough detail to answer the question whether the ETF Board can bind the Department to erroneous advice given by the Department's agents, in the narrow circumstances where the board has equity powers. In general, however, the courts are highly resistant to tying the government's hands because of the conduct of particular officials in their relations with particular individuals. Department of Revenue v.Moebius Printing Co., 89 Wis.2d 610, 638, 279 N.W.2d 213 *Page 147 
(1979). See also Heckler v. Community Health Services, 467 U.S. 51,60-61 (1984). To the extent that the individual relies on the advice of an agent contrary to promulgated statutes and regulations, the individual's reliance will almost never be considered reasonable. Heckler, 467 U.S. at 64-65; Flamm v.Ribicoff, 203 F. Supp. 507, 510 (S.D.N.Y. 1961).
Your final question is:
 Does the Department Secretary have the power under s. 40.03 (2)(m) to take action which the [ETF, TR or WR] board may not have direct power to take, to correct errors, if directed by the Board?
Section 40.03 (2) provides, in relevant part:
The secretary:
. . . .
 (m) Shall have all other powers necessary to carry out the purposes and provisions of this chapter, except as otherwise specifically provided by this chapter.
Section 40.03 divides authority over the Public Employe Trust Fund between the ETF Board, the secretary of the Department of Employe Trust Funds, the Department of Justice, the State Treasurer, the Actuary, and the Group Insurance, Teachers Retirement and Wisconsin Retirement Boards. The secretary has powers, including error-correcting powers, distinct from the powers given to the other entities defined in section 40.03. See,e.g., sec. 40.08 (5), (6), (10), Stats. In addition, the secretary may be given the ETF Board's equity power under section 40.03 (1)(a) if the board chooses to delegate that power to the secretary. Secs.40.03 (l)(1), 40.03 (2)(n), Stats. The TR and WR Boards are not a potential source of the secretary's delegated authority, since those boards lack authority to delegate their powers. The ETF, TR and WR Boards all have appeal jurisdiction over certain departmental decisions. Secs. 40.03 (1)(i), (7)(f), and (8)(f), Stats. If on appeal the TR or WR Board concludes that the secretary failed to correct an error which the secretary had statutory authority to correct, the board hearing the appeal may direct the *Page 148 
secretary to correct the error under the general authority of chapter 227. If on appeal the ETF Board concludes that the secretary failed to correct an error which the secretary had statutory authority to correct, the board may direct the secretary to correct the error under the appellate authority given by section40.03 (1)(j).
A more difficult question is whether the secretary's power under section 40.03 (2)(m) to "carry out the purposes and provisions of [chapter 40]" is limited by or supplemental to the specific statutory provisions of chapter 40. If that grant of authority were supplemental to the express authority granted by statutes, the secretary could correct certain errors even in the absence of specific authority to do so, based on a determination that correction of the error would be consistent with the purposes of the chapter. In the absence of greater descriptive detail about the "errors" referred to in your question, it is my opinion based on the general language of sections 40.01 (2) and 40.03 (2)(m) that the secretary's implied general powers in section 40.03 (2)(m) to act in furtherance of the purposes of the trust fund are limited by the specific statutory sections in chapter 40. See Grogan,109 Wis.2d at 81. If the statutes do not expressly grant or necessarily imply an error-correcting power to the secretary, the secretary is without such power. The ETF Board may not direct the secretary to correct errors which the secretary is powerless to correct.
DJH:BAO *Page 149