Robert G. PALOMBI, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION
and Janesville Public School, Defendants-
Respondents.†

Court of Appeals

*No. 86–1925. Submitted on briefs May 6, 1987.—Decided June
25, 1987.*

(Also reported in 410 N.W.2d 654.)

† Petition to review denied.

For the plaintiff-appellant, the cause was submitted on the briefs of *William S. Sample* and *Bruce Meredith* and *Wisconsin Education Association Council,* of Madison.

For the defendants-respondents, the cause was submitted on the brief of *Robert C. Reed,* of Madison.

Before Dykman, Eich and Sundby, JJ.

EICH, J. Robert Palombi appeals from a judgment and an order affirming a decision of the Labor and Industry Review Commission which computed his eligibility for unemployment compensation benefits on the basis of twenty-nine weeks of employment. The issue is whether an employee, who is on paid suspension and under directions not to report to work, may nonetheless be considered as "perform[ing] ... wage-earning services for the employer" within the meaning of sec. 108.02(13), Stats. (1981–82) [now 108.02(29), Stats. (1985–86)], and thus entitled to unemployment compensation credit for the period. We answer the question in the negative and affirm.

The facts are not in dispute. Palombi, a teacher in the Janesville school system, was suspended from his position without pay after two students complained that he had sexually assaulted them. A school district rule then in effect limited the duration of unpaid

teacher suspensions to thirty days. When the district was unable to complete its investigation into the charges against Palombi in that period of time, it converted his suspension to one with pay, and he continued in this status, under directions not to return to work, until he was fired six weeks later. Palombi eventually was tried and acquitted of all charges and he sought unemployment compensation benefits.

Once various conditions for eligibility are met, the amount of unemployment compensation available to a terminated employee is based on the number of his or her "weeks of employment." Sec. 108.04(4), Stats. (1983–84).[1] The quoted phrase is defined by sec. 108.02(29) as "those weeks in which the employe has performed any wage-earning services for the employer." The Department of Labor, Industry and Human Relations determined that Palombi's benefits should be based on twenty-nine weeks of employment with the school district. In so ruling, it rejected Palombi's argument that he be given credit for his six week paid suspension, concluding that "[s]taying away from ... work ... pursuant to the employer's orders does not constitute performing a wage-earning service for that employer." Palombi appealed, and the commission upheld the department's determination. He then sought judicial review, and the trial court affirmed, adopting the commission's decision as its own.

On appeal, we consider the commission's decision under the same rules that apply in circuit court. We are bound by the commission's findings of fact if they

---

[1]Unless otherwise noted, all statutory references are to the 1983–84 statutes.

are supported by substantial and credible evidence. *Holy Name School v. ILHR Department,* 109 Wis. 2d 381, 386, 326 N.W.2d 121, 124 (Ct. App. 1982). While generally we are not bound by the commission's conclusions of law, we will not upset its interpretation of a statute relating to matters within its administrative authority if that interpretation has a rational basis and "does not conflict with the statute's legislative history, prior [court] decisions ... or constitutional prohibitions." *Bachrach v. DILHR,* 114 Wis. 2d 131, 135, 336 N.W.2d 698, 700 (Ct. App. 1983).

Palombi argues that by obeying the directive not to report for work during his suspension, he was performing a wage-earning service for the district. His argument, based on one of several listed dictionary definitions of the word "service" as "an act done ... at the command of another," is not persuasive. First, it is apparent that the definition he selected—one of twenty in the listing—reflects a different usage of the word, for the accompanying "example" reads: "impose some [service] on me for thy love—Shak." *Webster's Third New International Dictionary* at 2075 (1976). Second, the inefficacy of dictionary definitions in resolving the issue is illustrated by the fact that Palombi was under suspension at the time; and Webster defines "suspension" as "forced withdrawal from the exercise of office, powers, prerogatives [or] privileges." *Id.* at 2303.

More to the point, we believe, is the suggestion in *Salerno v. John Oster Mfg. Co.,* 37 Wis. 2d 433, 155 N.W.2d 66 (1967), that we must limit ourselves to the definition of "weeks of employment" as contained in the statute itself. The *Salerno* court held that the statutory definition must be "literally adhered to"

even if the result will work injustice in some cases.[2] *Id.* at 439, 155 N.W.2d at 68–69. The *Salerno* court's reasoning is consistent with our recent acknowledgement that "when the legislature has undertaken to define a term for a specific application, we will not add to or expand that definition." *Revenue Dept. v. Johnson & Johnson,* 130 Wis. 2d 187, 191, 387 N.W.2d 91, 93 (Ct. App. 1986).

We do not believe that an employee who is suspended from his job pending an investigation of criminal charges against him—even though his wages continue during the period of suspension—can be considered as performing a service for his employer in any sense of the term. Such a conclusion flies in the face of common sense and does violence to the statute. And the fact that Palombi abided by the terms of his suspension by not reporting for work does not persuade us otherwise.

Palombi argues, however, that we should be more expansive in our reading of sec. 108.02(29), Stats., because its definition of "weeks of employment" has been broadened over the years. Palombi points out that prior to 1973 the phrase was defined simply as "weeks in which the employee had performed any wage-earning services," and that since that time it has been amended to expressly include vacation and termination pay,[3] as well as holiday and sick pay,

---

[2]In *Salerno,* the result of the court's literal interpretation of the predecessor to sec. 108.02(29), Stats. (1983–84), resulted in denying an employee credit for weeks when she was out of work as a result of the employer's unfair labor practice in firing her. *Id.* at 441, 155 N.W.2d at 70.

[3]Ch. 247, sec. 7, Laws of 1973.

disability payments and backpay awards.[4] Palombi does not argue that any of these amendments apply to his case, and we are satisfied that they do not. Rather, he argues that his situation—receiving wages while being ordered not to work—is similar in nature to those covered by the amendments, and that we should therefore read sec. 108.02(29) to include suspensions with pay. We reject the argument. Were we to adopt it, we would not only be ignoring the supreme court's holding in *Salerno,* but rewriting the statute as well, and this we may not do.

Finally, Palombi argues that we should interpret sec. 108.02(29), Stats., in light of cases arising under the Federal Unemployment Tax Act, 26 U.S.C. secs. 3301–3311, the Federal Insurance Contributions Act, 26 U.S.C. sec. 3101–3126, and similar federal legislation. While the cited acts deal with "weeks of employment" in other contexts, none of them defines the term as Wisconsin law does. Cases construing statutes dissimilar to our own are not instructive on the issues before us, and we are satisfied that the commission correctly applied the law.

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. (*dissenting*).

> Who best
> Bear his mild yoke, they serve him best: his state
> Is kingly; thousands at his bidding speed,
> And post o'er land and ocean without rest;
> They also serve who only stand and wait.

Milton, *On His Blindness* (1652).

Palombi's "mild yoke" was the school district's suspension pending an investigation of charges that

---

[4]1985 Wis. Act 17, sec. 4.

he molested two of his former students. The DILHR found that the district had failed to prove the misconduct for which it discharged Palombi and he was awarded unemployment benefits. A jury subsequently acquitted him of criminal charges arising out of the alleged molesting.

When the charges were made against Palombi, the district suspended him without pay. However, the district's policy was to limit unpaid suspensions to thirty days. Therefore, he was paid for six weeks during which he was investigated and he awaited the results of the district's investigation and its decision as to his continued employment.

The sole issue is whether the weeks during which Palombi was suspended with pay should be counted as weeks of employment under sec. 108.02(29), Stats. (1983–84). The LIRC affirmed the following determination of the examiner: "Staying away from his work station pursuant to the employer's orders does not constitute performing a wage-earning service for that employer."

The examiner and the LIRC concluded that a week in which an employee receives wages but does not do work for the employer is not a "week of employment" within sec. 108.02(29), Stats. (1983–84), which provides:

> An employe's "weeks of employment" by an employer means all those weeks in which the employe has performed any wage-earning services for the employer in employment subject to this chapter and, when requested by the employe, all those weeks for which the employe's vacation pay or dismissal or termination pay was allocable as wages for benefit purposes and for which benefits were not paid.

The LIRC contends that *Salerno v. John Oster Mfg. Co.*, 37 Wis. 2d 433, 155 N.W.2d 66 (1967), compels the conclusion that Palombi did not perform any wage-earning services when he stood and waited for the district to complete its investigation and decide the disposition of the charges against him. However, *Salerno* is readily distinguishable. There, the employee had been discharged and was awarded backpay in an unfair-labor-practice proceeding before the Wisconsin Employment Relations Board. *Id.* at 436, 155 N.W.2d at 67. Although she was ordered reinstated, during the period between the time she was discharged and when she was reinstated, she was not even an employee of the company. In contrast, Palombi was an employee of the district and acted under its direction, albeit he was suspended pending determination of his employment status.

The case relied on by the *Salerno* court, *Fredricks v. Industrial Comm.*, 4 Wis. 2d 519, 91 N.W.2d 93 (1958), involved a claim for unemployment compensation benefits by discharged employees following a protracted strike. During the period of the strike the employees withheld their services as a tool of economic suasion to coerce the employer to accept their wage demands. Under no view of their status could they have sustained a claim they continued to perform services for their employer. In contrast, Palombi did not withhold his services of his own volition. His employer directed him not to perform services except to cooperate in the ongoing investigation of the activities for which he was suspended.

Palombi was a public employee whose continued employment could have been detrimental to the public health, safety and general welfare. If Palombi was in fact guilty of molesting students, it was

527

imperative that he be suspended from contact with students. Persons in certain types of public employment have to accept that possible suspension while charges against them are investigated goes with the territory. It is public policy, reinforced by constitutional commands, that such employees not be summarily dismissed without notice and an opportunity to be heard and, especially, without an opportunity to clear their names of unfounded allegations damaging to their reputations. *Board of Regents v. Roth,* 408 U.S. 564, 573 (1972); 4 McQuillin, *The Law of Municipal Corporations,* sec. 12.255a, p. 447 (3rd ed. 1985). Such public employees have a duty to make themselves available and be responsive to the public employer's investigation of the activities for which they have been suspended. I conclude that such public employees, while under suspension for purpose of investigation and not for disciplinary purposes, are employees performing wage-earning services for the public employer.

Because I conclude that Palombi was performing wage-earning services for the district while he was suspended pending investigation and disposition of the charges against him, I dissent.