# DRIVERS, SALESMEN, WAREHOUSEMEN, MILK PROCESSORS, CANNERY, DAIRY EMPLOYEES & HELPERS LOCAL NO. 695, Plaintiff-Respondent-Petitioner,

v.

# LABOR & INDUSTRY REVIEW COMMISSION, Defendant-Appellant.

Supreme Court

*No. 88-1259. Argued October 31, 1989.—Decided March 14, 1990.*

(Also reported in 452 N.W.2d 368.)

For the plaintiff-respondent-petitioner there were briefs by *David Leo Uelmen, Scott D. Soldon, William S. Kowalski* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* Milwaukee and oral argument by *Mr. Soldon.*

For the defendant-appellant there was a brief and oral argument by *Peter W. Zeeh,* Department of Labor and Industry Review Commission.

CHIEF JUSTICE HEFFERNAN. This is a review of a decision of the court of appeals, 147 Wis. 2d 640, 433 N.W.2d 638 (Ct. App. 1988), which held that dues refunds to stewards of Local No. 695 of the Drivers,

Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees and Helpers Union constituted wages paid by the Union to those stewards and, consequently, were assessable to the Union for contribution under the provisions of the Wisconsin Unemployment Compensation Law (ch. 108, Stats. 1985). We conclude that the refunds were not remuneration for services as made a prerequisite under sec. 108.02(26), Stats., and, therefore, are not "wages" for this purpose.[1] We reverse the court of appeals.

The history of this litigation demonstrates that the problem presented, although simple to state, has been one of substantial difficulty to those who have reviewed it administratively and judicially. First, we note that, although the law, in the respect pertinent here, has existed without material change since 1931, and the union refund procedure under consideration has long existed, it was not until 1985 that the Unemployment Compensation Division of the Department of Industry, Labor and Human Relations (DILHR) attempted to treat as wages the refunds made to union stewards. The hearing examiner concluded that dues refunds to stewards were not wages subject to contribution by the employer (Union) within the provisions of sec. 108.02(26) and secs. 108.17 and 108.18, Stats. These latter two provisions provide for the mechanics of assessing an employer's contributions for wages paid to the employees. The examiner found there was no connection between the refund of dues to stewards and the performance of personal services.[2]

---

[1]Section 108.02(26), Stats., provides:

> 108.02(26)   "Wages means every form of remuneration payable for a given period . . . to an individual for personal services . . ..

[2]The hearing examiner did find there was a connection

The appeal tribunal's decision, *i.e.*, the decision by the department's hearing examiner, pursuant to sec. 108.09(3), (4), and (5), Stats., was then reviewed by the Labor and Industry Review Commission, pursuant to sec. 108.09(6).[3] It affirmed the appeal tribunal in respect to lost-time payments and reversed in respect to dues refunds, holding the latter were wages paid by the Union. On judicial review, pursuant to sec. 108.09(7), the circuit court for Dane county reversed the Review Commission, holding that the refunds were not to be treated as wages under ch. 108, Stats. The court of appeals disagreed, concluding that the refunds were wages for services. We, in turn, reverse the court of appeals. Hence, this administrative determination has gone through six layers of decisions, and each has disagreed with the one preceding it.

We put the case in the factual posture as determined by the Labor and Industry Review Commission and the hearing examiner for the department.

---

between personal services of the steward when taking time off from regular work and the payment for that lost time by the Union under circumstances where the steward in fact performed services for the Union during the time-off period. The objection to this facet of the original assessment by DILHR against the Union has been abandoned. While not an issue on this review, lost-time payments and the circumstances under which they are acknowledged to be taxable to the Union are instructive in conceptualizing circumstances under which payments are wages for *services.* The contrast between lost-time payments and refunds will be discussed later in this opinion.

[3] It is the decision of the Commission which we are reviewing, for the standard of review to be applied to its decision is the same whether utilized by the circuit court, the court of appeals, or this court. *Boynton Cab Co. v. ILHR Dept.,* 96 Wis. 2d 396, 405, 291 N.W.2d 850 (1980).

The petitioner in this court is Local No. 695 of what is commonly referred to as the Teamsters Union, with jurisdiction over approximately the southern one-third of the state of Wisconsin. Local No. 695 collects dues each month from its members. These dues are set by the International Union constitution at approximately twice the average hourly wage in the bargaining unit. Generally, these dues are collected by a wage check-off implemented by the employer and sent to the local union once a month in a single check.

Local No. 695 has stewards in most of the bargaining units it represents. They are usually selected by the membership of the bargaining unit, although some are selected by the Union's business representatives. Stewards are always working members of the bargaining unit and are employees in the ordinary course of their employment with the employer—not the Union.

Stewards are assessed dues on the same basis as other union members. However, once a year, usually in December, the dues checked off during the year are refunded to the stewards. At one time, the local unions waived dues for stewards, but, at the insistence of the International Union, put stewards on the check-off-and-refund procedure.[4] In the event a steward leaves employment before the end of a calendar year, he is given a refund on a pro-rata basis. In some units of Local No. 695, however, where there are less than 15 members in the bargaining unit, it is economically unfeasible to

---

[4]A rationale utilized by the circuit court in support of its decision was that there were, in fact, no dues refunded to the stewards—that this was merely an accounting procedure designed to comply with the International's directive and, hence, was a waiver of dues and not a repayment or refund at all. We reject this assertion. Whether the payment is waived up front or refunded later is irrelevant.

refund dues and no dues are refunded. In some large units, a committee acts instead of stewards and those committee members receive no dues refund. The record does not indicate that those committee members receive any emoluments of office. Stewards act as go-betweens in respect to the Union and the employer, conveying information from the Union to the employer and vice versa. They assist union members in pursuing grievances and also explain employer's problems to the Union's membership. The Union customarily conducts a school to educate stewards. The undisputed evidence elicited by the hearing examiner demonstrated that 75 percent of the stewards in Local No. 695 do nothing whatsoever in their position as stewards, but all are given the refund of dues. While the witness—the office manager for the local—gave as his opinion that a steward could be removed for failure to perform duties, he testified that no steward had ever been denied a refund nor has any steward been removed for failing to perform properly.

Stewards, however, received a type of payment from the Union. In the event it becomes necessary for a steward to take off time from work to act on behalf of the Union, pay is lost that would otherwise be received from the employer, but the Union compensates the steward "dollar for dollar" to reimburse the wage loss.

On the basis of the transcript, the Commission made findings of fact set forth as follows:

> The second form of payment made to union stewards consists of a refund of their union dues. The individual employer deducts union dues from all union members, including stewards, and forwards this money to the union. Each December, the union refunds to each steward the amount of dues which has been deducted from his check. The purpose of the refund is not clearly defined by the union, but there is

no question that it is a monetary reward for acting as a union steward. Union stewards act as representatives of the union in the everyday affairs of the workplace. The position they hold and the services they perform as stewards are clearly for the benefit of the union. There is no question that the dues refund that they receive is a form of remuneration paid to them by the union for their services.

The Commission then concluded that the union dues refunds to stewards were "wages subject to the contribution requirements of the unemployment compensation law, within the meaning of sections 108.02(26), 108.17 and 108.18 of the statutes."

Although the above conclusion is denominated as a conclusion of law, it is noteworthy that no legal authority is cited in the opinion of the Commission. That, of course, is not objectionable, but it highlights the fact that the conclusion of law reached by the Commission is one of first impression—a conclusion for which it neither relied on, nor referred to, any precedents or any prior decision in its own proceedings.

The court of appeals correctly stated:

> Whether on these facts union dues [refunds] are remuneration payable for a given period for an individual's services and are therefore wages as defined in sec. 108.02(26), Stats., is a question of law.

147 Wis. 2d at 642.

While the court of appeals correctly stated that the Commission's decisions on a question of law are not conclusive on a court, it then went on, incorrectly in these circumstances, to state that, because the Commission administers the unemployment compensation law, therefore, all of its legal decisions under the aegis of the

unemployment compensation law are entitled to "great weight" on judicial review. We think not.

Section 108.09(7)(b), Stats., provides in part that:

> Any judicial review under this chapter shall be confined to questions of law, and the provisions of ch. 102 with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section.

Section 102.23(1)(e), Stats., permits an award or decision to be set aside only if (1) the commission acts without or in excess of its powers, (2) if the order or award is procured by fraud, or (3) if the findings of fact do not support the order or award.

In the instant case, there is no dispute in respect to the facts. The question is one of law: Do the admitted refunds under the unquestioned circumstances constitute "wages" as defined in the unemployment compensation law?

■

Whether or not the dues refunds constitute "wages" under sec. 108.02(26), Stats., requires the application of facts to a statute. That is a question of law. "The black-letter rule is that a court is not bound by an agency's conclusions of law." *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534 (1984). However, *West Bend* points out that, in some cases, it is appropriate for a court to give deference to an agency's interpretation of a statute.

The general rule is stated in *Beloit Education Asso. v. WERC,* 73 Wis. 2d 43, 67, 242 N.W.2d 231 (1976):

> [T]he general rule in this state is that ". . . the construction and interpretation of a statute adopted by the administrative agency charged by the legisla-

ture with the duty of applying it is entitled to great weight."

That same case points out that the standard of deference—that great weight is to be given to applications or interpretations that have a rational basis—is based on the practical interpretation rule, *i.e.,* the regular and repeated interpretations of statutes or rules that have been applied in practice by an agency that is charged with the special duty of administering the statute and is, therefore, presumed to have some special expertise not acquired by courts. That rule of practical interpretation does not apply " 'unless the administrative practice is long continued, substantially uniform and without challenge by governmental authorities and courts.' " *Beloit, supra* at 67–68, quoting *Wood County v. Board of Vocational T. & A. Ed.,* 60 Wis. 2d 606, 618, 211 N.W.2d 617 (1973).

The court of appeals stated that the Commission's conclusions of law should be given "great weight." Its opinion states, "[W]e give great weight to its interpretation, and we will sustain its reasonable interpretation . . .." 147 Wis. 2d at 642. Here, however, the question is one of first impression. In *West Bend Education, supra* at 12, the court quotes a statement in *Beloit* that, in a case of "very nearly" first impression, the weight to be given to an agency's interpretation is not to be of "great weight," but rather "due weight" or "great bearing." There is nothing in this case to suggest that the Commission has had any experience in interpreting the statute as measured against these facts of first impression. Nor, as explained in *American Motors Corp. v. ILHR Dept.,* 101 Wis. 2d 337, 353–54, 305 N.W.2d 62 (1981), is there any evidence of the promulgation of administrative rules pertinent to the interpretation of the statute in

light of the facts here. Most importantly, special deference to be afforded an agency is the result of a course of uniform interpretation over a period of time. Where a legal question is concerned and there is no evidence of any special expertise or experience, the weight to be afforded an agency interpretation is no weight at all. That this is a case of first impression is starkly revealed by the fact that this court is the sixth governmental tribunal to review this question. Each decision has overruled the preceding one. Clearly, there is no administrative expertise or precedent disclosed in respect to the resolution of this unique issue. Nor has there been any assertion that the Commission is more competent than this or any court to interpret and apply the statute.

Here, the standard of review must necessarily be *de novo*. This issue in the posture that it appears is one that requires this court's own interpretation of the words of the statute. This does not mean that the Commission was incorrect. Rather, we give the application of the statute to the facts a new look as a matter of original statutory interpretation by this court, giving full deference to the factual predicate established by the Commission—a factual predicate we do not review.

We need look only to the literal meaning of the statute. Wages are "every form of remuneration payable . . . to an individual for personal services . . .."

Here, the undisputed facts show that there is no evidence that the refunds are "payable" for "*personal services.*" On the contrary, it is clear that, in 75 percent of the cases, the stewards rendered no personal services to the Union. They were paid only by virtue of stewards being denominated as such. The record demonstrates that there is no compulsion, through union rules or discipline, to perform any personal services. While it is true

that stewards may be available to assist union members, there is nothing in the record to show that they perform any personal services for which they are paid by the refund of dues. The rendering of personal services, insofar as the record is concerned, is unrelated to the dues refund. In some bargaining units stewards who got no refunds conducted themselves just as did the stewards who received refunds. No claim has been made that refunds are "payable." There is a total lack of evidence to show that the services trigger the refunds. The Union appropriately points out the lack of a nexus between the refund and personal services in that there are no services that are required to trigger the dues refund.

The situation in respect to "lost time" demonstrates a different situation. It is clear that "lost time" payments are remuneration for personal services and, hence, "wages." A steward loses time when time is taken off from work to carry out duties in performing services as a bargainer, as a representative, or as a counselor to a union member in a grievance proceeding. The nexus between personal services and payments as wages is as apparent in respect to lost time as it is obscure in respect to refunds where the only basis for the payment is status as a steward.

The Commission cites no legal proposition or case to support its position, nor does the court of appeals in upholding the interpretation of the Commission.

The proposition relied upon by the court of appeals—the only authority—is to be found in Milton's *On His Blindness,* "They also serve who only stand and wait." We have no quarrel with this poetic wisdom in appropriate circumstances.[5] Here, the steward did not

---

[5]*See, Palombi v. Labor & Industry Review Comm.,* 140 Wis. 2d 520, 410 N.W.2d 654 (Ct. App. 1987) (Sundby, J., dissenting); and *Theune v. Sheboygan,* 57 Wis. 2d 417, 421, 204 N.W.2d 470

*only* stand and wait. Unlike the firefighter to whom the steward's status has been likened, the steward does not have the exclusive function of "waiting," as in a ready room, for a call to action. The steward was not waiting for a call from the Union in the sense of being paid to wait. The steward was paid by the principal employer to work at the usual job. When the steward was called to do something on behalf of the Union, payment was made for those services by loss-of-time reimbursement.

While it is clear that these emoluments that are received by stewards are beneficial to them, we are constrained by the posture of this case by the definition of "wages" found in sec. 108.02(26), Stats. They may be income to the stewards, although we have no occasion to so hold in this case; but they are not "wages" as defined in the unemployment compensation law of this state. Accordingly, we reverse the decision of the court of appeals which affirmed the decision of the Commission.[6]

(1975). Another view of the impact of Milton's philosophy on affairs both temporal and spiritual appears in A.E. Housman's, *A Shropshire Lad:*

> Oh many a peer of England brews
> Livelier liquor than the Muse,
> And malt does more than Milton can
> To justify God's ways to man.
> Ale, man, ale's the stuff to drink
> For fellows whom it hurts to think.

[6]The Union relies upon a number of cases which assert that to be a "wage," payment must be for services rendered. It cites *Israelite House of David v. United States,* 58 F. Supp. 682 (W.D. Mich. S.D., 1945); *Radice v. New Jersey Dept. of Labor & Industry,* 4 N.J. Super. 364, 67 A. 2d 313 (1949); *Dellacroce v. Industrial Comm.,* 111 Colo. 129, 138 P. 2d 280 (1943); and *Palombi v. Labor & Industry Review Comm.,* 140 Wis. 2d 520, 410 N.W.2d 654 (Ct. App. 1987). While all of these cases, to a degree, support

*By the Court.*—Decision reversed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). The Labor and Industry Review Commission (LIRC) determined that the refunds of union dues to union stewards constitute wages under sec. 108.02(26), Stats. 1987-88.[1] The majority opinion limits deference to LIRC's application of the statute to instances of long-standing administrative practice, majority op. pp. 82-83, and decides the question ab initio. The majority opinion reverses LIRC, concluding that the refunds are not wages.

I conclude that the majority opinion applies the wrong standard of review. I would give weight to LIRC's application of the statute to the facts in this case and would affirm LIRC's conclusion because the agency's determination is reasonable. Accordingly, I dissent.

This case raises the most troublesome issue in judicial review of administrative agency determinations, namely whether the application of law to the facts is a question of fact or law for purposes of judicial review. *Nottelson v. ILHR Dept.,* 94 Wis. 2d 106, 115, 287 N.W.2d 763 (1980).

---

the general principle that to be a wage there must be a nexus between personal services and the remuneration, the factual situations are markedly different from that in the instant case, and we do not rely on any of them for our decision.

[1]Section 108.02(26), Stats. 1987-88, provides: " 'Wages' means every form of remuneration payable for a given period . . . to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses, tips . . . payments in kinds and any other similar advantage received from the individual's employing unit or directly with respect to work for it . . .."

We have characterized an administrative agency's application of the law to the facts of a case as a conclusion of law and have concluded the agency's determination is entitled to weight (1) if the agency's experience, technical competence, and specialized knowledge aid the agency in its application of the statute, (2) if the agency's conclusion is intertwined with factual determinations or with value or policy determinations, or (3) if the agency's application of the law is of long standing. *West Bend Education Assn v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1984).

In this case, I conclude that LIRC has expertise in applying the statutory definition of wages and that the application of the statutory definition of wages to the facts of this case is intertwined with the facts of the case and values and policy determinations.

LIRC determines what constitutes "wages" under ch. 108 in a variety of cases. See *e.g., State Dept. of Transp. v. Labor and Industry Review Comm'n,* 122 Wis. 2d 358, 360, 361 N.W.2d 722 (Ct. App. 1984); *Moorman Mfg. Co. v. Industrial Commission,* 241 Wis. 200, 5 N.W. 743 (1942); Wis. Dept. of Industry, Labor, and Human Relations, *Unemployment Compensation Digest.*

In determining whether the refunds are wages, neither LIRC nor a court is called upon to interpret the statute through interpretative rules or reliance on extrinsic evidence such as legislative history.[2] The determination of whether the union steward received wages requires examining the facts for the nexus of the funds to personal services, see majority op. pp. 84–85. This deter-

---

[2]The majority opinion states that it looks to the literal meaning of the statute. Majority op. p. 84. It treats statutory interpretation and application of the statute to the facts interchangeably. See majority op. pp. 81–84.

mination is fact specific and can be made only by applying the law to the concrete facts of the case. See *Theune v. Sheboygan,* 57 Wis. 2d 417, 421, 204 N.W.2d 470 (1975).

According to the record in this case, a small number of union members receive dues refunds each year. In return for the refunds and the title of steward, this small group must attend training sessions on mediation of disputes between union members and employers. The stewards are expected to perform services for the unions or the members when needed. When the stewards perform union services on company time and lose company wages, the union compensates them for lost time. Stewards are reimbursed for performing union services on their own time by the refund of union dues. About 25 percent of the stewards actually performed services for the union or its members. About 75 percent of the stewards did not render personal services to the union or its members. Majority op. p. 84. No one disputes these facts.

On the basis of this record, I believe that it was reasonable for LIRC to conclude that dues refunds were wages under the statute. The refunds appear to be similar to a retainer for services: the refunds were paid to keep the stewards available to render union services and to reimburse the stewards for union services rendered.

For these reasons, I dissent.