State of Wisconsin, DEPARTMENT OF HEALTH &
SOCIAL SERVICES, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
and William D. Tappa, Defendants-Respondents.

Court of Appeals

*No. 89–1410. Submitted on briefs January 12, 1990.—Decided
November 21, 1990.*

(Also reported in 464 N.W.2d 74.)

300

302

For the plaintiff-appellant the cause was submitted on the briefs of *Neil Gebhart,* Assistant Legal Counsel for the *Department of Health and Social Services.*

For the defendants-respondents the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Lowell E. Nass,* assistant attorney general.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J. The Department of Health and Social Services appeals from an order affirming the Labor and Industry Review Commission's order under sec. 56.21(1), Stats. (1983–84),[1] awarding temporary

[1]References in this opinion are to the statutes and administrative rule in effect when Tappa was injured. Our decision is,

total disability benefits to William Tappa for injuries he sustained while confined at Sanger Powers Correctional Institution. LIRC concluded that Tappa was capable of earning the maximum average weekly wage as computed under sec. 102.11(1) (intro.), and (1)(a), Stats., and Wis. Adm. Code sec. Ind 80.51(3) and determined his benefits accordingly. DHSS argues that Wis. Adm. Code sec. Ind 80.51(3) is inapplicable or invalid and that Tappa's average weekly earnings should have been computed at the $30 minimum provided for under sec. 102.11(1) (intro.).

We conclude that Wis. Adm. Code sec. Ind 80.51(3) does not apply to Tappa because he was not injured in a prison industry. We further conclude that LIRC should have computed Tappa's average weekly earnings under sec. 102.11(1)(c), Stats. We therefore reverse and remand the cause to the circuit court with directions that it remand the proceedings to LIRC for a determination of Tappa's temporary total disability on the basis of his average weekly earnings computed under sec. 102.11(1)(c).

## BACKGROUND

When Tappa was injured, he was working as lead man in the maintenance department. He was earning $.45 per hour. After his release from prison, he filed a claim against DHSS under sec. 56.21(1), Stats., for compensation to an injured prisoner. LIRC found that Tappa's injury caused temporary total disability payable to him from his date of release until his physician permitted him to return to work. Pursuant to Wis. Adm. Code sec. Ind 80.51(3), LIRC determined that Tappa was presumed to be earning the maximum average

however, precedential because there have been no material changes in the statutes or rule.

weekly wage under sec. 102.11(1) (intro.) and (1)(a), Stats., and computed his benefits accordingly. LIRC computed Tappa's average weekly earnings on the basis of his work history prior to incarceration, because Tappa had no work record after his release. From this history, LIRC inferred that Tappa was capable of earning the maximum weekly wage in effect on the date of his release from prison. LIRC therefore concluded that Tappa was entitled to temporary total disability at the maximum rate.

## I.
## APPLICABLE STATUTES AND RULE

Section 56.21(1), Stats., provides:

> If an inmate of a state institution, in the performance of assigned work is injured so as . . . to have materially reduced earning power, the inmate may, upon being released from such institution . . . be allowed and paid such compensation as the department of industry, labor and human relations finds the inmate entitled to. The inmate shall be compensated on the same basis as if the injury had been covered by ch. 102 . . . .. If the injury results from employment in a prison industry, the payment shall be made from the revolving appropriation for its operation. If there is no revolving appropriation, payment shall be made from the general fund . . . ..

Section 102.11(1) (intro.), Stats., provides:

> The average weekly earnings for temporary disability . . . for injury in each calendar year on or after January 1, 1982, shall be taken at not less than $30 nor more than the wage rate which results in a maximum compensation rate of 100% of the state's aver-

age weekly earnings as determined under s. 108.05 as of June 30 of the previous year . . ..

Section 102.11(1)(a), Stats., provides:

Daily earnings shall mean the daily earnings of the employe at the time of the injury in the employment in which he was then engaged . . .. The average weekly earnings shall be arrived at by multiplying the daily earnings by the number of days and fractional days normally worked per week at the time of the injury in the business operation of the employer for the particular employment in which the employe was engaged at the time of his injury.

Section 102.11(1)(c), Stats., provides:

In the case of persons performing service without fixed earnings, or where normal full-time days or weeks are not maintained by the employer in the employment in which the employe worked when injured, or where, for other reason, earnings cannot be determined under the methods prescribed by par. (a) or (b), the earnings of the injured person shall, for the purpose of calculating compensation payable under this chapter, be taken to be the usual going earnings paid for similar services on a normal full-time basis in the same or similar employment in which earnings can be determined under the methods set out in par. (a) or (b).

Section .102.11(1)(b), Stats., applies to seasonal employment.

Wisconsin Adm. Code sec. Ind 80.51(3) provides:

Prisoners injured in prison industries are considered to be earning the maximum [average] weekly earnings under the provisions of s. 102.11, Stats., except as a showing is made to the contrary.

306

## II.
## WAS TAPPA EMPLOYED IN A PRISON INDUSTRY?

We first consider whether Wis. Adm. Code sec. Ind 80.51(3) applies. We conclude that it does not.

The interpretation of an administrative rule is a question of law which we review *de novo. Castle Corp. v. DOR,* 142 Wis. 2d 716, 719, 419 N.W.2d 709, 710 (Ct. App. 1987). An administrative rule cannot be read in isolation. *McGarrity v. Welch Plumbing Co.,* 104 Wis. 2d 414, 427, 312 N.W.2d 37, 43 (1981). If it is part of a comprehensive statutory and regulatory scheme, it must be read in conjunction with its companion statutes. *Id.* Wisconsin Adm. Code sec. Ind 80.51(3) is part of a comprehensive statutory and regulatory scheme providing for employment and compensation for inmates in the state prisons.

DHSS may establish prison industries with the approval of the Prison Industries Board. Section 56.01(1)(b), Stats., provides:

> The department, with the approval of the prison industries board, may establish industries for the employment of inmates in the state prisons. Prison industries may engage in manufacturing articles for the state and its political subdivisions and any tax-supported institution or nonprofit agency and for sale of such articles to other states or political divisions thereof or to the United States . . ..

LIRC argues that "it is cutting the bread 'too thin' " to assert that Tappa, as a lead maintenance person, was not an essential part of the prison's "industries." We cannot, however, cut the bread thick enough to fit

Tappa's "assigned work" within the compass of "prison industries."

It is plain from the statutes which are "companion" to Wis. Adm. Code sec. Ind 80.51(3) that not all inmates work in a prison industry. Section 46.065, Stats., provides that the department may allow inmates "moderate wages, to be paid from the operation, maintenance, farm and construction appropriations of the institution in which they are confined . . .. Earnings by inmates working in the prison industries and the retention and distribution thereof shall be governed by s. 56.01(4) and (8)." Section 56.21(1), Stats., recognizes that an injury to an inmate may result from "the performance of assigned work" or "from employment in a prison industry." If the latter, payment is made from the revolving appropriation for operation of the prison industry. If, however, the injury results from the performance of assigned work, payment shall be made from the general fund.

We conclude that "prison industries" as used in Wis. Adm. Code sec. Ind 80.51(3) has the meaning given to that term in sec. 56.01(1)(b), Stats. Thus, an inmate is not employed in a prison industry unless the prisoner is working in an industry established by DHSS with the approval of the Prison Industries Board. LIRC does not claim that Tappa was so employed. Because we find that the administrative rule has no application to the controversy between DHSS and LIRC, we do not decide the validity of the rule.

III.
HOW SHOULD TAPPA'S AVERAGE WEEKLY
EARNINGS BE COMPUTED?

LIRC argues that Tappa was entitled to temporary total disability benefits based on the wage rate resulting in the maximum compensation rate under sec. 102.11(1), Stats. DHSS argues that Tappa's benefits should have been computed at the minimum average weekly wage rate of $30. We conclude that Tappa's earnings should have been "taken" under sec. 102.11(1)(c), Stats., at the usual going earnings paid for similar services on a normal full-time basis in employment in which earnings can be determined under sec. 102.11(1) (intro.) and (1)(a), Stats.

LIRC contends that, even if Wis. Adm. Code sec. Ind 80.51(3) does not apply, its determination of Tappa's benefits was fair and reasonable under sec. 56.21(1), Stats., or sec. 102.11(1), Stats. There are no disputed facts. The application of statutes to undisputed facts is a question of law. *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990). "The black-letter rule is that a court is not bound by an agency's conclusions of law." *Id.* (quoting *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984)). The determination of an inmate's weekly average earning rate under secs. 56.21(1) and 102.11(1), Stats., is a question of first impression. "Where a legal question is concerned and there is no evidence of any special expertise or experience, the weight to be afforded an agency interpretation is no weight at all." *Id.* at 84, 452 N.W.2d at 372. We therefore determine the question *de novo.*

Section 56.21(1), Stats., provides that an injured inmate may, upon release, "be allowed and paid such compensation as the department of industry, labor and human relations finds the inmate entitled to." However, that language is qualified by the following sentence which provides that "[t]he inmate shall be compensated

on the same basis as if the injury had been covered by ch. 102 . . .." Therefore, we must look to the provisions of ch. 102, Stats.

LIRC argues that sec. 102.11(1) (intro.) and (1)(a), Stats., do not require that the commission determine Tappa's benefits according to his actual earnings while in prison because those earnings did not accurately represent what his "normal" earnings would be outside of prison. We agree. However, it does not follow that LIRC was therefore free to pay Tappa whatever compensation it determined. When earnings cannot be determined under sec. 102.11(1) (intro.) and (1)(a), sec. 102.11(1)(c) provides that "earnings . . . shall . . . be taken to be the usual going earnings paid for similar services on a normal full-time basis in the same or similar employment . . .."

DHSS argues, however, that there is no reason Tappa's average weekly earnings cannot be computed under sec. 102.11(1) (intro.) and (1)(a), Stats. It points out that while in prison Tappa was paid $.45 per hour and worked normal full-time work days and weeks. However, sec. 56.21(1), Stats., evidences a legislative intent to compensate an injured inmate for his or her materially reduced earning power when the inmate is returned to society. That intent is not fulfilled by compensating an inmate according to the artificial wage rates paid while he or she is institutionalized. An inmate who performs assigned work in a state institution is not working in "normal" employment.

We therefore conclude that Tappa's average weekly earnings for performing the work assigned to him while he was in prison should have been "taken" at "the usual

310

going earnings" paid for similar services—maintenance lead man—on a *normal* full-time basis.

An analogous situation is presented when a loaned employee is employed by a special employer. In *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm'n,* 10 Wis. 2d 405, 102 N.W.2d 754 (1960), an employee of a dairy company was injured when he briefly did some work for the lumber company. After determining that the claimant was the lumber company's employee at the time of the injury, the commission turned to sec. 102.11(1)(c), Stats., to compute the claimant's injuries on the basis of "the usual going earnings paid for similar services on a normal full-time basis in the same or similar employment." *Id.* at 415, 102 N.W.2d at 760. *See also Village of West Salem v. Industrial Comm'n,* 162 Wis. 57, 155 N.W. 929 (1916) (widow of plumber acting temporarily as policeman awarded compensation on the basis of policeman's wages rather than plumber's).

"The purpose of the statute [sec. 102.11] relating to calculation of average weekly earnings is to base compensation upon the normal income that one derives from his employment." *National Pressure Cooker Co. v. Industrial Comm'n,* 249 Wis. 381, 384, 24 N.W.2d 697, 698 (1946). LIRC should have computed Tappa's average weekly earnings on the basis of the normal income that one would derive in private industry as a lead man in a maintenance department. We direct the circuit court to remand these proceedings to LIRC to make that determination.

LIRC argues that DHSS has waived its opportunity to present evidence that Tappa would have been paid less than the maximum wage rate allowable under sec. 102.11(1) (intro.) and (1)(a), Stats. We reject LIRC's

waiver argument. LIRC failed to compute Tappa's average weekly earnings under the applicable statute, sec. 102.11(1)(c), Stats. Its award therefore lacks a statutory foundation.

*By the Court.*—Order reversed and cause remanded to the circuit court with directions to remand the proceedings to LIRC for a determination of Tappa's benefits in accordance with this opinion.