Wisconsin DEPARTMENT OF REVENUE, Plaintiff-Appellant-Cross Respondent,

v.

SENTRY FINANCIAL SERVICES CORPORATION, Defendant-Respondent-Cross Appellant.

SENTRY FINANCIAL SERVICES CORPORATION, Plaintiff-Respondent-Cross Appellant,

v.

Wisconsin DEPARTMENT OF REVENUE, Defendant-Appellant-Cross Respondent.

Court of Appeals

*No. 90–0708. Submitted on briefs December 11, 1990.—Decided March 28, 1991.*

(Also reported in 469 N.W.2d 235.)

For the plaintiff-appellant-cross respondent and defendant-appellant-cross respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Gerald S. Wilcox,* assistant attorney general.

For the defendant-respondent-cross appellant and plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Walter Kuhlmann, John S. Robison* and *Catherine M. Rottier* of *Boardman, Suhr, Curry & Field* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   The Wisconsin Department of Revenue appeals from a judgment and an order affirming a decision of the Tax Appeals Commission. The issues in the case relate to the department's authority under sec. 71.11(7m), Stats. (1981–82), to reallocate income between subsidiary and parent corporations to more "clearly reflect" their income,[1] and that statute's relationship to sec. 71.311(1)(b), which declares certain intra-family corporate distributions to be tax-free.[2]

---

[1]The statute, which now appears in sec. 71.10(1), Stats., authorized the department to "apportion or allocate gross income, deductions, credits or allowances" between parent and subsidiary companies upon a determination that "such distribution, apportionment or allocation is necessary in order . . . clearly to reflect the income of such organizations . . .."

All references to this and other statutes in this opinion will be to the 1981–82 volume.

[2]Under sec. 71.311(1)(b), Stats., "no gain or loss shall be

904

We hold that the commission properly overturned the department's allocation of income in this case on grounds that any gain or loss on the transaction in question was nonrecognizable under sec. 71.311(1)(b), Stats.

Sentry Financial Services Corporation (SENCO) cross-appeals, arguing that its sale of a plane to the Sentry Corporation was not a "bargain sale" within the meaning of sec. 71.11(7m), Stats. We disagree and affirm.

The case arose from a 1982 transfer of a corporate airplane by SENCO to its parent company, Sentry Corporation (SENCOR) in exchange for a payment of $453,560. SENCO had purchased the plane in 1972 and leased it to its "grandparent" company, Sentry Insurance, for ten years.[3] SENCO, taking the position that the 1982 transaction was simply a "buyout" at the end of the Sentry lease, did not report any taxable gain on the transaction.

The department, considering the transaction to be a "bargain sale"—e.g., one between interrelated businesses within the meaning of sec. 71.11(7m), Stats.—exercised its authority under that section to allocate a taxable gain to SENCO of approximately $7.5 million and assessed additional franchise taxes against the company in the amount of $652,435 for the period in question.

The commission agreed with the department that the transaction "was . . . not an exercised lease purchase option at an arm's length price," but rather was a " 'bargain sale' between commonly owned corporations." The commission concluded, however, that even though the department has the authority under sec. 71.11(7m),

recognized to a corporation on the distribution, with respect to its stock of . . . [p]roperty."

[3]SENCO is a wholly-owned subsidiary of SENCOR which, in turn, is a wholly-owned subsidiary of Sentry Insurance.

Stats., to allocate income between commonly-owned corporations, that authority cannot override the nonrecognition-of-gain provisions of sec. 71.311(1)(b). Thus, the commission ruled that the department had "failed to properly consider the [nonrecognition] provisions of [the tax laws]" and had thus "err[ed]" in allocating additional income to SENCO: "Considering such provisions, the allocation . . . constituted an abuse of [the] discretion conferred [upon the department by] § 71.11(7m), Stats."[4]

Both parties petitioned for judicial review, SENCO challenging the finding that the transaction was a "bargain sale," and the department claiming error in the commission's ruling that the nonrecognition provisions of sec. 71.311, Stats., applied. The circuit court affirmed

---

[4]The commission's determination of the appropriate tax treatment of the transaction is not easily followed.

In sum, the commission treated the transaction as part sale to SENCOR and "part constructive dividend" or "constructive distribution," based on the transfer of the aircraft. Section 71.301, Stats., indicates the general tax treatment of "distribution[s] of property" (other than corporate stock) and provides a method of determining the "amount" of the distribution (generally, the amount of money received plus the lesser of the property's fair market value or its basis immediately before the distribution).

Then, applying the nonrecognition provisions of sec. 71.311(1)(b), Stats., and various profit and loss carryback and carryover provisions of the tax laws, the commission summarized its decision as follows:

> To summarize, given part sale and part constructive dividend treatment under §§ 71.301 and 71.311, Stats., no additional taxable income or loss is ascribable to [SENCO] in 1982. Additional taxable dividend income resulting to SENCOR is offset by part of the NOL [net operating loss] available in 1982, resulting in no additional 1982 tax liability.

the commission in all respects and both parties appealed to this court. We affirm.

We begin by noting that each of the Wisconsin statutes at issue in this case has a counterpart in the Internal Revenue Code. While not identical in all respects, the federal provisions and the regulations adopted pursuant thereto, and their interpretation by the federal courts, have been relied on by the parties (and the commission) throughout these proceedings. We agree that they constitute reliable authority for resolution of this appeal.[5]

## THE "BARGAIN SALE" ISSUE

On its cross-appeal, SENCO argues that the commission lacked authority to allocate income to it under sec. 71.11(7m), Stats., because the 1982 transaction was not a bargain sale. It acknowledges the interrelationship between it and SENCOR, but it maintains that the transfer of the plane was simply the culmination of the Sentry lease—an oral lease-end "option" or "buyout" provision which SENCO and Sentry intended to be part of the written lease agreement. As a result, SENCO contends there was no taxable gain of any kind when the plane changed hands.

Both SENCO and the department treat the issue—whether there was a "bargain sale"—as one of

---

[5]The Wisconsin tax statutes at issue here are nearly identical to their federal counterparts. Sections 71.301 and 71.311, Stats., are comparable to I.R.C. secs 301 and 311, and sec. 71.11(7m) parallels I.R.C. sec. 482 (1954).

Where a statute is modeled on a federal prototype, we appropriately resort to federal case law and interpretive regulations for interpretive guidance. *See Ladish Co. v. Wis. Dep't of Revenue,* 69 Wis. 2d 723, 733–34, 233 N.W.2d 354, 359 (1975).

fact, governed by the substantial evidence rule. We review an agency's findings of fact to see whether they are supported by substantial evidence in the record. Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Samens v. LIRC,* 117 Wis. 2d 646, 659, 345 N.W.2d 432, 437 (1984) (citations omitted).

There are no option or "buyout" provisions in the written lease. SENCO offered testimony, however, that throughout the lease term, both it and Sentry contemplated that, at the end of ten years, Sentry would be able to acquire title to the plane upon payment of approximately ten percent of the original purchase price.

The commission found to the contrary, emphasizing the dichotomy between SENCO's "lease-buyout" argument and the plain and specific terms of the written lease. Not only is there no reference to any such option or buyout in the twenty-two page single-spaced document, but SENCOR was not a party to the lease. In addition, the lease plainly requires the lessee, Sentry, to "forthwith deliver possession" of the aircraft and all its books and logs to SENCO at the end of the lease term.

The commission expressed its rationale for giving greater weight to the contract terms than to SENCO's testimony on the existence of an oral side-agreement in the following language:

> To find a contractual right to purchase, you would have to ignore the specific terms of a highly detailed 15-page lease agreement drafted by [SENCO] who at all times had access to the corporate legal staff of [Sentry] for review and guidance.
>
> You would also have to ignore specific language in the agreement to the contrary, i.e., that at the end of the lease term [Sentry] was required to return the

aircraft to SENCO at a location to be determined by SENCO.

Finally, to rule in SENCO's favor we would also have to somehow create a bridge between Sentry and SENCOR who was not even a party to the lease agreement.

[SENCO] tried mightily to convince us to ignore the specific terms of the lease it drafted in the name of economic reality. To buy their economic reality and/or substance over form argument we would have to completely ignore a specific, clear 15-page contract, a step that would render written contracts meaningless. This is a step we cannot and will not take.[6]

The commission also emphasized in its decision that SENCO never presented any evidence of what the plane might have sold for in an "arms-length" transaction between two unrelated parties. It also noted that had the transaction been reported over the years as a lease with option-to-purchase, rather than as a simple operating lease, the tax treatment in those years likely would have been different. Thus, according to the commission, SENCO received "particular tax benefits" by treating the agreement as an operating lease and should not be permitted to "restructure" the document to turn it into a lease/purchase agreement in order to gain further tax benefits. We agree.

The evidence was in conflict, and "[t]he weight of the evidence and the credibility of the witnesses are matters resting within the province of the trier of fact." *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, 293 N.W.2d 155, 159 (1980). The commission, as trier of fact, acted

---

[6]The majority opinion agreed with this language, taken from a dissenting portion of the commission's decision.

within its authority when it relied on the terms of the lease and the other circumstances of the transaction, rather than on the testimony of SENCO's witnesses. Its "bargain sale" conclusion is supported by substantial evidence.

## THE "OVERRIDING" EFFECT
## OF SECS. 71.301 AND 71.311, STATS.

Ruling that secs. 71.301 and 71.311, Stats., were applicable to the SENCO/SENCOR transaction, the commission concluded that the department had failed to consider those "nonrecognition" statutes and thus "abuse[d its] discretion" when it reallocated SENCO's income as a result of the sale. The department, arguing that secs. 71.301 and 71.311 are inapplicable to the transaction, contends that the commission erred in so ruling.

Despite the "abuse-of-discretion" language in the commission's decision, we do not see the issue in that light. If the application of a statute to a particular set of facts is a question of law, reviewable *de novo* by this court, *State v. Big John,* 146 Wis. 2d 741, 748, 432 N.W.2d 576, 579 (1988), the same must be true when the question is one of resolving an apparent conflict between two statutes. That is especially true, we feel, where, as here, the question appears to be one of first impression before the commission.[7] *See Local No. 695 v. LIRC,* 154

---

[7]The memorandum (majority) opinion accompanying the commission's findings of fact, conclusions of law and order states that the commission had issued "only [one] previous written decision under § 71.11(7m)," and that that decision had to do with attributing imputed interest to a subsidiary company on interest-free loans made to the parent. The opinion notes that the decision

Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990).

The department argues first that the nonrecognition provisions of secs. 71.301 and 71.311, Stats., cannot be applied in this case because there is nothing in those statutes specifically stating that they apply to bargain sales and, further, by their terms, they apply only to "distribution[s] with respect to its [the transferring corporation's] stock," which this transaction was not.

---

"was issued . . . without any opinion, or any discussion of the[ ] issues."

Even so, a tribunal abuses its discretion when it proceeds on an erroneous view of the law. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968). Whether the allocation provisions of sec. 71.11(7m), Stats., override the nonrecognition provisions of sec. 71.311 under the facts of the case is a question of law which we are as competent as the department to decide. *West Allis School Dist. v. DILHR,* 110 Wis. 2d 302, 304, 329 N.W.2d 225, 227 (Ct. App. 1982).

We note, too, that the department maintains that neither we nor the commission can overturn the department's application of sec. 71.11(7m), Stats., unless its action was "unreasonable, arbitrary or capricious." In *Eli Lilly & Co. v. Commissioner,* 856 F.2d 855, 860–61 (7th Cir. 1988), however, the court stated:

> We are unaware of any decision discussing the standard that governs appellate review of a Tax Court's reallocation. One might argue that appellate review of the Tax Court's allocations should parallel the Tax Court's review of the Commissioner's allocation—that the allocation should be upheld unless a de novo review of the facts shows it to be arbitrary, capricious or unreasonable. However, we lack the fact-finding capabilities that are essential to resolving factual discrepancies under that standard . . .. Our usual standards of review must therefore apply. The Tax Court's legal conclusions will receive plenary review . . ..

Under any standard, the department's action cannot reasonably stand in view of the provisions of the applicable statutes, federal and state, together with relevant regulations, texts and treatises on the subject.

We agree that secs. 71.301 and 71.311, Stats., deal with "distribution[s] . . . with respect to . . . stock" and that neither statute specifically refers to "bargain sales." We do not agree, however, that this fact compels reversal of the commission's decision.

First, Treasury Regulation 1.301-1(j), interpreting the Internal Revenue Code provision comparable to sec. 71.301, Stats., states that in "a sale . . . by a corporation to a shareholder which is a corporation, for an amount less than its fair market value . . . such shareholder shall be treated as having received a distribution to which sec. 301 [sec. 71.301, Stats.] applies . . .."[8] Similarly, Treasury Regulation 1.301-1(k), entitled "Application of [the] rule respecting transfers for less than fair market value," refers to a bargain sale between a corporation and its shareholder which, although never treated as a distribution with respect to stock, is considered a "distribution . . . under sec. 301 . . .." Thus, the provisions of the federal law relating to distributions (including the nonrecognition provisions)—which, like those in Wisconsin, contain no specific reference to bargain sales—are nonetheless considered applicable to such sales.

Second, and with particular regard to the distributions-with-respect-to-stock language of secs. 71.301 and 71.311, Stats., the commission determined that the SENCO/SENCOR transfer was a "constructive dividend" or a "constructive distribution," and thus the equivalent of a distribution "with respect to stock." The department claims this was error, emphasizing that no dividends were ever declared by either party and that neither treated the sale as a dividend or distribution.

---

[8] A sec. 71.301, Stats., distribution—if it is one of stock or, as here, property—is subject to the nonrecognition provisions of sec. 71.311.

Bittker and Eustice, in their treatise, *Federal Income Taxation of Corporations and Shareholders* (5th ed. 1987), recognize that under the federal counterpart to sec. 71.301, Stats., a transfer of property to a shareholder is a distribution subject to the nonrecognition rules "even though it is not declared in a formal fashion." *Id.,* par. 7.05, p. 7–25. "[I]f a corporation sells property worth $100 to its shareholders for $60, the $40 spread will be treated as a distribution under § 301," *id.* at p. 7–29, and thus also subject to the nonrecognition provisions of I.R.C. sec. 311 (sec. 71.311).

As the commission noted, a constructive dividend is a device used by the taxing authority and the courts to recharacterize a transaction as a dividend, regardless of whether the parties had originally denominated it as such. Thus:

> a taxpayer can be charged with disguised or constructive dividend income even though the corporation has not observed the formalities of dividend declaration, and has not made a prorata distribution to the . . . stockholders, and even though neither the corporation nor the shareholder intended a dividend and the corporation did not record the distribution as a dividend for bookkeeping purposes . . .. "[T]he crucial concept in finding a constructive dividend is that the corporation conferred an economic benefit on the stockholder without the expectation of repayment." *Crosby v. United States,* 496 F.2d 1384, 1388 (5th Cir. 1974) (citations omitted).

That is what the commission did here, and the department has not satisfied us that it lacked the authority to do so, or that, in doing so, it acted unreasonably.

As to the relationship between secs. 71.11(7m) and 71.311, Stats., there is, and always has been, a tension

913

between the taxing authority's allocation powers under federal and state law, and nonrecognition-of-gain provisions such as those at issue here. The purpose of I.R.C. sec. 482 (sec. 71.11(7m)), is to place interrelated taxpayers on a parity with individual taxpayers by preventing them from using their relationship to distort their income—to shift income and deductions between themselves in order to reduce their total tax liability. *See* Treas. Reg. 1.482–1(b). Other sections of the code, however—notably the nonrecognition provisions at issue here—expressly provide favorable tax treatment for certain transactions between interrelated parties. And the same is true with respect to the state-law counterparts of those provisions. Here, for example, the department exercised its allocation powers under sec. 71.11(7m) because it believed that the parties' failure to recognize taxable gains from the transaction resulted in a distortion of their income. But nonrecognition of the gain, as the commission found, is a tax treatment specifically granted by the legislature in sec. 71.311.

We agree with the commission that this tension must be resolved in favor of nonrecognition in this case—that nonrecognition may be appropriate, even where the result does not clearly reflect, and thus distorts, the parties' income, as long as the transfer serves a valid business purpose and was not done in order to avoid or evade taxation or in furtherance of other prohibited ends.

We also find the following comment on the companion federal laws to be especially pertinent:

> Because Congress permitted the result [nonrecognition of the gain], it is difficult to conceive that this result could be characterized as a distortion of income. Presumably, Congress would not permit

914

through one provision something which it intended to prevent through another provision. To find that compliance with a nonrecognition provision creates a distortion of income is to find that Congress gave a specific tax treatment with one hand while taking it away with the other. Comment, *Section 482 and the Nonrecognition Provisions: Resolving the Conflict,* 77 Nw. Univ. L. Rev. 670, 692-93 (1982).

The Court of Claims took a similar position in *Ruddick Corp. v. United States,* 643 F.2d 747, 752 (Ct. Cl. 1981):

> The statutory framework that permits taxpayers to transfer property tax free . . . implicitly accepts some income shifting and attendant income distortion. . . . [W]here no tax avoidance is present, the Commissioner should not be permitted to extend Section 482 [sec. 71.11(7m), Stats.] into areas where the . . . distortion . . . was contemplated by and flowed from the application of the nonrecognition provision[s] . . .. In other words, Section 482 cannot be allowed, in the absence of a taint, to change or modify (on the ground of income distortion) a transaction which Congress has seen fit to authorize specifically in spite of the fact that that transaction may well embody some sort of income distortion. Having contemplated and authorized that possible distortion, Congress is not to be frustrated by use . . . of the general provisions of Section 482.[9] (Citation omitted.)

---

[9]For a discussion of how the legislative history of the allocation power granted by IRC sec. 482 indicates the intent of Congress that the power be used "to prevent tax evasion rather than to prevent *all* cases of income distortion" see Comment, 77 Nw. Univ. L. Rev. at 689-90 (emphasis in original).

In this case the commission recognized a business-related purpose underlying the transfer of the plane to SENCOR—to house all corporate aircraft of the various Sentry companies in a single entity at a single location. Thus, in the absence of attempted tax avoidance or evasion, income distortion alone is an insufficient reason to permit overriding the nonrecognition provisions of secs. 71.301 and 71.311, Stats.[10]

We consider *Bank of America v. United States,* 79-1 USTC Par. 9170, p. 86,250 (N.D. Cal. 1978), to be particularly instructive on the point. There a subsidiary banking corporation transferred the assets of its foreign branches to the parent bank in consideration of the parent's assumption of the branches' liabilities and the payment of an additional amount of cash. The IRS assessed

---

[10]The department's brief frequently characterizes the commission's decision as sanctioning a scheme to avoid taxes on the part of the Sentry companies. However, the case has not proceeded on that basis. Indeed, the department apparently stipulated in the proceedings before the commission that it was not basing its power to allocate the sale income on the portion of sec. 71.11(7m), Stats., authorizing it to do so when "necessary . . . to prevent evasion of taxes." The department's assessment was, as indicated, based solely on the ground that the allocation was "necessary . . . clearly to reflect the income of the [related companies]."

Indeed, the commission specifically rejected the department's attempt to argue "tax-avoidance": "Despite [the department's] stipulation that evasion is not involved, [it] would have us read into this case an avoidance element . . . .. *The record before us contains no evidence that the placing of the [plane] in SENCOR was pursuant to a plan of tax avoidance.*" (Emphasis added.) Thus, this is not a case like *Northwestern National Bank of Minneapolis v. United States,* 556 F.2d 889 (8th Cir. 1977), a case relied on by the department, where there was a significant element of tax avoidance or evasion present.

a tax deficiency against the subsidiary under the allocation powers of I.R.C. sec. 482. The district court reversed, holding that the nonrecognition provisions of I.R.C. sec. 311 applied:

> This deferral and shifting of tax liability from a corporation to its shareholder is the essence of the nonrecognition provisions of section 311, which represents a Congressional policy decision that such a transfer would not be an appropriate occasion to impose tax liability on the distributing corporation.
>
> Nor is there any distortion of income produced by this transfer which is not sanctioned by section 311 . . .. The transaction has not run afoul of any of the judicially recognized exceptions to the nonrecognition sections. There has been no anticipatory assignment of income, no attempt to transform ordinary income into capital gain, no violation of the tax benefit rule and no sham distribution of corporate property to a shareholder who immediately sells it to a third party. In taking advantage of the tax benefits afforded to a distributing corporation by section 311, the [transferring bank] has violated neither the letter nor the spirit of the tax laws. *Id.* at 86,252–53.

We believe the same is true here. There is no suggestion in the record that any of the "exceptions" discussed by the *Bank of America* court exist here. We therefore conclude, as that court did, that because there is no evasion of taxation in this case, and no distortion of income not sanctioned by sec. 71.311(1)(b), Stats., the department erred when it allocated income to SENCO

under sec. 71.11(7m). We thus affirm the circuit court and the commission in all respects.

*By the Court.*—Judgment and order affirmed.